15 A.3d 818

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v.
JASON SHELLEY, DEFENDANT–RESPONDENT.

Argued November 30, 2010—Decided March 9, 2011.

Rivera–Soto, J., filed dissenting opinion.

*Leslie–Ann M. Justus,* Deputy Attorney General, argued the cause for appellant (*Paula T. Dow,* Attorney General of New Jersey, attorney).

*Stephen W. Kirsch,* Assistant Deputy Public Defender, argued the cause for respondent (*Yvonne Smith Segars,* Public Defender, attorney).

Justice LaVECCHIA delivered the opinion of the Court.

In this appeal we are called on to review the Appellate Division's vacation of defendant Jason Shelley's conviction for the third-degree offense of distributing cocaine within a school zone, in violation of *N.J.S.A.* 2C:35–7 (establishing criminal penalty for selling or attempting to sell drugs within areas designated as school zones). Defendant admitted to selling cocaine to an undercover officer in the parking lot of a pub located within 1,000 feet of "The Goddard School for Early Childhood Development of North Brunswick," a local franchise of a nationwide chain of licensed day care providers offering programs for children from infancy through age six. This particular Goddard School included a kindergarten class with ten full-time students enrolled. The question raised by this appeal is whether the presence of a kindergarten class converts this childcare center into an "elementary school" for purposes of *N.J.S.A.* 2C:35–7. Because the plain language and legislative history of our state's school-zone statute do not indicate that such enterprises as this Goddard School fall within its application, and because we must strictly construe the penal statute in issue, we affirm the Appellate Division judgment.

I.

The record reveals the following information about the childcare facility at the center of this appeal.

The Goddard School for Early Childhood Development of North Brunswick ("Goddard") is part of a chain of childcare and development centers. Goddard is licensed by the State of New Jersey as a state childcare center and offers programs for children from six weeks to six years old. The North Brunswick location includes one full-day kindergarten program staffed by a state-certified teacher; however, it does not offer schooling above the kindergarten level. Ten kindergarten students were enrolled at Goddard when, on the evening of April 8, 2005, defendant sold cocaine to an undercover police officer while standing within 1,000 feet of Goddard's facility.

Defendant was arrested and indicted for third-degree distribution of cocaine near school property contrary to *N.J.S.A.* 2C:35–7.[1] He filed a motion to dismiss the charge on the basis that Goddard is not an elementary school for the purposes of the school-zone statute. The trial court denied the motion on March 30, 2007, finding that the presence of a kindergarten class on the premises was dispositive that Goddard was an elementary school for the purposes of *N.J.S.A.* 2C:35–7's application. Defendant entered a conditional guilty plea to the charge, reserving the right to appeal the disposition of his motion to dismiss. The trial court subsequently sentenced defendant to four years imprisonment with three years of parole ineligibility.

On defendant's appeal, the Appellate Division vacated the conviction in an unpublished opinion. Applying rules of statutory interpretation that call for a plain language understanding and strict construction of a penal statute, and invoking the doctrine of lenity where a penal statute is found to be ambiguous, the panel concluded that "the addition of a ten-student kindergarten to a pre-school child care center does not render the institution an 'elementary school[ ]' " under the language of *N.J.S.A.* 2C:35–7.

## II.

When interpreting statutory language, the goal is to divine and effectuate the Legislature's intent. *DiProspero v. Penn*, 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005). In furtherance of that goal, we begin each such inquiry with the language of the statute, giving the terms used therein their ordinary and accepted meaning. *Ibid.* When the Legislature's chosen words lead to one clear and unambiguous result, the interpretive process comes to a close, without the need to consider extrinsic aids. *State v. D.A.*, 191 *N.J.* 158, 164, 923 *A.*2d 217 (2007) (citation omitted). We seek

---

[1] Defendant was also charged with third-degree distribution of cocaine, contrary to *N.J.S.A.* 2C:35–5(a)(1) and *N.J.S.A.* 2C:35–5(b)(3), for activities that predate the April 8, 2005 crime. His conviction and sentence on those offenses are not part of this appeal.

out extrinsic evidence, such as legislative history, for assistance when statutory language yields "more than one plausible interpretation." *DiProspero, supra,* 183 *N.J.* at 492–93, 874 *A.*2d 1039.

When interpreting penal statutes, the doctrines of strict construction and lenity also provide guidance. *D.A., supra,* 191 *N.J.* at 164, 923 *A.*2d 217. The doctrine of lenity, a corollary to the doctrine of strict construction, dictates that when ambiguities "cannot be resolved by either the statute's text or extrinsic aids," a criminal statute must be interpreted in favor of the defendant. *State v. Gelman,* 195 *N.J.* 475, 482, 950 *A.*2d 879 (2008) (citations omitted).

The offense of distributing illicit drugs within a school zone is set forth in *N.J.S.A.* 2C:35–7, which makes it a third-degree crime to distribute, to dispense, or to possess with intent to distribute, a controlled dangerous substance

> while on any school property used for school purposes which is owned by or leased to any elementary or secondary school or school board, or within 1,000 feet of such school property . . .

Importantly, neither "school" nor "elementary" are explicitly defined by the terms of the statute. *N.J.S.A.* 2C:35–7. We turn then to consider whether the statute was intended to apply in the circumstances presented here.

### III.

### A.

In the absence of any legislative reference in *N.J.S.A.* 2C:35–7 to a specific definition of an elementary school, other sources indicate some common understanding of that term. A simple dictionary definition of "elementary school" describes "[t]he first six to eight years of formal education[, or] a school [usually] for the first six or eight grades." *Webster's II New College Dictionary* 364 (1st ed. 1995). A "kindergarten" is "a program or class for four- to six-year-old children that is as an introduction to regular school." *Id.* at 607. Thus, the dictionary definitions lead to a conclusion that an elementary school generally includes the

first six to eight grades and may include a kindergarten program as an introduction to formal education.[2] The parties point to various specialized educational provisions in State Department of Education regulations that make passing reference to elementary school or to kindergarten. *See N.J.A.C.* 6A:9–9.1(a) (concerning instructional certificates and specialized endorsements); *N.J.A.C.* 6A:9–2.1 (defining "nonpublic school" for purposes of professional licensure requirements). However, none definitively establish whether a kindergarten class, standing unconnected to other elementary grades, constitutes an "elementary school."

Thus, it is unclear, judging the plain language alone, whether the Legislature intended that the provision of a kindergarten class in an otherwise private day care center was to be encompassed by *N.J.S.A.* 2C:35–7's reference to an elementary school. Because there exists some ambiguity in the application of the statute's words, resort may be had to extrinsic aids, such as legislative history and relevant canons of statutory construction, in our effort to divine with greater certainty the Legislature's intent. We turn, therefore, to the available legislative history on the statute.

## B.

The school-zone statute was adopted in connection with the Comprehensive Drug Reform Act of 1986, *see L.* 1987, *c.* 101, § 1, to combat "the infiltration of illicit drugs and drug trafficking activity into school safety zones." *Official Commentary to the Comprehensive Drug Reform Act (Laws 1987, Chapter 106)*, 9 *Crim. Just. Q.* 149, 157 (Fall 1987) [hereinafter *Official Commentary* ]; *see also State v. Lewis,* 185 *N.J.* 363, 370, 886 *A.*2d 643

---

[2] Despite the dissent's statement that "elementary school" is "frequently" defined in a manner that conforms to the dissent's interpretation, *see post,* Op. at 336–37, 15 *A.*3d at 827–28, it quotes from only one source for that proposition. Indeed, the other dictionaries referenced in the opinion themselves fail to include the term "kindergarten" within the definition of "elementary school." In any event, it seems clear that dictionary definitions do not settle the question presented in this appeal.

(2005) (explaining intent of Comprehensive Drug Reform Act of 1986 and Legislature's desire to protect children from "drug culture"). Inspired by federal law,[3] *N.J.S.A.* 2C:35–7 was crafted to create a "drug 'safety zone' around schoolyards" to protect children from drug traffickers and to create drug-free environments conducive to educating students about "the dangers of drug use." *Official Commentary, supra,* 9 *Crim. Just. Q.* at 157; *see also State v. Gonzalez,* 254 *N.J.Super.* 300, 305, 603 *A.*2d 516 (App.Div.1992) ("By enacting *N.J.S.A.* 2C:35–7, the legislative design was 'to afford special protection to children from the perils of drug trafficking [and] to ensure that all schools and [adjacent] areas ... are kept free from drug distribution activities.' " (citation omitted)). Because "children routinely congregate on school property and schoolyards" throughout the year, regardless of whether school is formally in session, the school-zone statute is intended to provide a "permanent, [twenty-four-hour] drug safety zone around schools[.]" *Official Commentary, supra,* 9 *Crim. Just. Q.* at 157. In furtherance of that goal, *N.J.S.A.* 2C:35–7 imposes a term of mandatory imprisonment and parole ineligibility, subject to *N.J.S.A.* 2C:35–12, for defendants convicted of possession with intent to distribute or distribution of drugs within a designated school zone. *Ibid.*

The legislative history to the enactment of *N.J.S.A.* 2C:35–7 provides a rich account of amendments that tailored the statute's reach. The thrust of those changes was a narrowing of the scope of the original bill's broad delineation of what constitutes a school zone. In its nascent form, the originally introduced bill would have required enhanced sentencing for drug offenses occurring "within 1,000 feet of the property surrounding *any school in this State which provides instruction for children up to and including the age of 18 years.*" S. 2449 [Official Copy Reprint], 202nd Leg. (N.J.1987) (emphasis added). The Senate Law, Public Safety and Defense Committee deleted that language and replaced it with the

---

3 *See* 21 *U.S.C.A.* § 860 (2009) (encompassing former 21 *U.S.C.A.* § 845a).

following limitation: "within 1,000 feet of the property of *any public or nonpublic school or any center, facility, or other educational institution* under the supervision of the Department of Education in this State *which provides for the precollegiate instruction of children.*" S. 2449 [Official Copy Reprint], 202nd Leg. (N.J.1987) (emphasis added). The Committee explained that its change "clarif[ied] the types of schools to be covered by the bill's provisions." *Senate Law, Public Safety & Defense Comm. Statement to S., No. 2449,* 202nd Leg. (N.J. Aug. 13, 1987).

The General Assembly further amended the bill, once again narrowing the scope of a school zone to the following: "any school property used for school purposes which is owned by any *elementary or secondary school* or school board, or within 1,000 feet of any school property or school bus." Assemb. 3270 [Assembly Reprint], 202nd Leg. (N.J.1987) (emphasis added). That version was enacted into law on April 15, 1987. *See L.* 1987, *c.* 101, § 1. Importantly, the *Official Commentary* accompanying the adopted language explains the limitations imposed by the definition of school property:

> The definition of school property is ... limited to elementary and secondary (junior high and high) schools. It does not matter for purposes of this section whether the school is public, private or parochial. *The definition of school property, however, does not include nursery, preschool or day care centers;* nor does it include colleges, junior colleges, universities or proprietary adult vocational schools.
>
> [*Official Commentary, supra,* 9 *Crim. Just. Q.* at 157 (emphasis added).]

Thereafter, in 1988, the statute again was amended into the form that survives today. The zone of protection extends to "any school property used for school purposes which is owned by *or leased to* any elementary or secondary school or school board, or within 1,000 feet of such school property." *L.* 1988, *c.* 44, § 3 (emphasis added). The Senate Sponsor Statement to the 1988 amendments explained that the "original intent" of the law "was to create a permanent drug safety zone [around] schools, in recognition that children routinely congregate on school property and schoolyards before and after the normal school day, and during

summer recess and other vacation periods." *Statement to [Second Reprint] S., No. 2026,* 203rd Leg. (N.J.1988).

Thus, the progressively narrowed language demonstrates that the Legislature chose to limit school zones to areas around elementary or secondary schools, rather than *any* school serving children ages eighteen and under or providing pre-collegiate instruction, as would have been included within the zone under the earlier, broader language. During the legislative process, day care providers, nursery schools, and preschool programs clearly were removed from the bill's reach. Therefore, the law should be interpreted and applied consistent with that apparent legislative purpose. The plain legislative intent to exclude day care providers, nursery schools, and preschool programs suggests that the statute was not meant to apply to a facility such as the Goddard School, a licensed day care provider.

Moreover, as a penal statute, we must strictly construe the language of *N.J.S.A.* 2C:35–7 where there is some uncertainty as to its application. *See Gelman, supra,* 195 *N.J.* at 482, 950 *A.2d* 879. And, we glean additional legislative direction to circumscribe the reference to "elementary school" in *N.J.S.A.* 2C:35–7 to a commonsense understanding of what constitutes such a school, rather than to stretch its definition to include day care providers. *See N.J.S.A.* 2C:1–2(c) (directing that provisions of New Jersey's Criminal Code "shall be construed according to the fair import of their terms"). In gauging legislative intent both from the final language chosen for inclusion, and the limiting amendments that honed the described reach of a school zone under *N.J.S.A.* 2C:35–7, we do not believe that when eliminating day care providers from the statute's scope the Legislature intended to ensnare persons close to day care centers that happen to include a private kindergarten class. Nor do we think that the happenstance of having the word "school" or a like term in a facility's title is illuminating in our analysis.[4] The Goddard School is a licensed day care

---

[4] Our ruling similarly would exclude the "Karate Academy," an example cited during oral argument, from the statute's application.

facility, which is the type of establishment that was excluded from the school-zone statute's application.

In coming to a point of repose in our analysis of the instant statutory interpretation question, we seek nothing more than to effectuate the legislative will and, in doing so, to enforce a commonsensical application of the statute. Accordingly, for completeness, we note one final and pertinent insight gleaned from the statute's legislative history. To the extent that the legislative history contains references to a desire to protect places where children congregate, the Legislature's elimination of providers of nursery care, day care, and preschool programs from *N.J.S.A.* 2C:35–7's reach reconciles that concern for us. The Legislature apparently did not consider nursery school students reasonably vulnerable to the "drug culture," presumably because such youthful children are constantly supervised and do not congregate outside the watchful eyes of parents and teachers. Such children simply are not as free to gather, unsupervised, in or around such facilities as older children might around elementary and secondary schools. The Legislature thus rationally differentiated nursery care, day care, and preschool providers and made *N.J.S.A.* 2C:35–7 inapplicable to such entities. We respect that judgment for, typically, such private facilities do not serve as centers of public or civic activity or recreation for children in the same manner as may an elementary or secondary school and its property.

Our role is to discern and apply legislative intent to the extent that it can be ascertained. In this matter, we conclude that the Legislature's intent in respect of this statute was evidenced by the systematic paring of the bill's language to apply, ultimately, only to protected zones around schools comprised of generic levels of instruction (elementary or secondary) or around school property serving school purposes if leased or owned by an elementary or secondary school or school board.[5]

---

[5] Another example cited during oral argument involved an asserted stand-alone kindergarten facility within an urban school district in the state. That

In conclusion, a fairly unique question of statutory interpretation and application arose in this matter: whether a private day care center, which includes as its highest level a small kindergarten class, constitutes an elementary school for purposes of the application of *N.J.S.A.* 2C:35–7. In order to be consistent with the perceived legislative intent, to act in conformity with the duty to strictly construe penal statutes, and, when there is doubt, to err on the side of lenity, we hold that it does not. In so holding, we need not fashion an omnibus definition [6] of "elementary school" for purposes of *N.J.S.A.* 2C:35–7, but rather simply hold that institutions such as Goddard do not trigger liability under the school-zone statute as drafted by the Legislature. Clearly, the essential character of Goddard is a day care center, offering predominantly nursery school and pre-school programs, with one private kindergarten class for its eldest enrollees. Following the guidance provided by the legislative history, we find that the inclusion of a small kindergarten class does not transform a day care center into an elementary school for the purposes of construing and applying this criminal statute. If our perception of what was intended by the Legislature is inconsistent with the statute's original purpose, we have no doubt that legislative clarification will be provided for the benefit of the State, for the courts responsible for the consistent application of the criminal statutes, and for the public that needs clear and fair notice of the statute's reach.

## IV.

The judgment of the Appellate Division is affirmed.

---

kindergarten facility serving school purposes clearly would be entitled to application of the school-zone statute by virtue of the "owned by or leased to any ... school board" language in the statute. *N.J.S.A.* 2C:35–7.

[6] We specifically do not consider, therefore, whether a private school comprised solely of kindergarten classes, *see United States v. Echevaria*, 995 *F.*2d 562, 564–65 (5th Cir.1993), would meet the statutory definition of an "elementary school."

Justice RIVERA–SOTO, dissenting.

Based on a mixed brew of principles of statutory construction leavened by the doctrine of lenity, the majority determines that defendant Jason Shelley cannot be held liable for violating the statute that proscribes the possession or distribution of drugs within a school zone, *N.J.S.A.* 2C:35–7. It so concludes because—in the majority's view—the school within that school zone does not qualify as an "elementary school" under the statute. I cannot agree and, therefore, respectfully dissent.

## I.

### A.

As part of the Comprehensive Drug Reform Act of 1987, *N.J.S.A.* 2C:35–1 to –24,[1] the Legislature adopted *N.J.S.A.* 2C:35–7. In clear, simple and unmistakable language, that statute provides, in relevant part, that "[a]ny person who violates [*N.J.S.A.* 2C:35–5(a)][2] by distributing, dispensing or possessing with intent to distribute a controlled dangerous substance or controlled substance analog while ... within 1,000 feet of ... school property ... is guilty of a crime of the third degree[.]" That proscription is intended to be absolute; *N.J.S.A.* 2C:35–7(d)[3]

---

[1] Since its enactment, the Comprehensive Drug Reform Act of 1987 has been amended several times, with its last section, *N.J.S.A.* 2C:35–24, having been added by *L.* 1999, *c.* 90, § 9 (eff. May 3, 1999). None of those amendments or additions is implicated in this appeal.

[2] *N.J.S.A.* 2C:35–5(a) provides that:

Except as authorized by [law], it shall be unlawful for any person knowingly or purposely:
   (1) To manufacture, distribute or dispense, or to possess or have under his control with intent to manufacture, distribute or dispense, a controlled dangerous substance or controlled substance analog; or
   (2) To create, distribute, or possess or have under his control with intent to distribute, a counterfeit controlled dangerous substance.

[3] At the time defendant committed his offenses in 2005, *N.J.S.A.* 2C:35–7 was not subdivided into subsections; this provision, however, was a separate but

also specifically commands that:

> It shall be no defense to a prosecution for a violation of this section that the actor was unaware that the prohibited conduct took place while on or within 1,000 feet of any school property. Nor shall it be a defense to a prosecution under this section, or under any other provision of this title, that no juveniles were present on the school property at the time of the offense or that the school was not in session.

The straightforward prohibition against transacting in drugs within a school zone does not exist in a vacuum. The codified declaration of policy and legislative findings that introduces the Comprehensive Drug Reform Act of 1987 explicitly states:

> It is also the policy of this State to afford special protection to children from the perils of drug trafficking, to ensure that all schools and areas adjacent to schools are kept free from drug distribution activities, and to provide especially stern punishment for those drug offenders who operate on or near schools and school buses, who distribute to juveniles, or who employ juveniles in a drug distribution scheme.

> [*N.J.S.A.* 2C:35–1.1 (c).]

According to the *Official Commentary to the Comprehensive Drug Reform Act (Laws 1987, Chapter 106) (Official Commentary)*, 9 *Crim. Just. Q.* 149, 151 (Fall 1987), "this declaration [of policy and legislative findings], by identifying the purposes to be achieved by this reform initiative, will aid the courts in interpreting and implementing the specific provisions of the act." The *Official Commentary* further explains that *N.J.S.A.* 2C:35–7

> creates a new third-degree crime to deal with persons who distribute, dispense or possess with intent to distribute a controlled substance within 1,000 feet of a school.... This section, which is roughly modeled after federal law found at 21 *U.S.C.* § 845a,[4] effectively creates a drug "safety zone" around schoolyards in recognition not only that children, who are often the targets of distributors, congregate there, but also that areas surrounding schools must be kept drug free if they are to serve as the primary medium for educating young people as to the dangers of drug use.

> [*Official Commentary, supra*, 9 *Crim. Just. Q.* at 157.]

---

undifferentiated part of the statute as originally enacted. In January 2010, *N.J.S.A.* 2C:35–7 was amended and reorganized, and this provision—unchanged—was re-codified as subsection (d). *See L.* 2009, *c.* 192, § 1 (eff. Jan. 12, 2010).

4 Now recodified as 21 *U.S.C.* § 860.

The *Official Commentary* likewise informs that "[i]t does not matter in a prosecution under [*N.J.S.A.* 2C:35–7] whether children were actually present or whether the school was in session at the time the offense occurred." *Ibid.* It explains that "[r]ather, [*N.J.S.A.* 2C:35–7] is intended to create a permanent, 24–hour drug safety zone around schools, in recognition that children routinely congregate on school property and schoolyards before and after the normal school day, and during summer recess and other vacation periods." *Ibid.*

Moreover, "[i]t is not a defense to a prosecution under [*N.J.S.A.* 2C:35–7] that the actor was unaware that he was distributing [drugs] within a school zone[,]" noting that, "as to this element, the defendant will be held strictly liable for his illegal acts occurring within a zone." *Ibid.* For that reason, "[i]t is thus incumbent upon drug traffickers to ascertain their proximity to schools and remove their illegal operations and activities from these specially protected areas, or assume the risk and stern consequences for their failure to do so." *Ibid.*

That clear statement of policy consistently and repeatedly has found expression in our case law. *State v. Maldonado,* 137 *N.J.* 536, 582, 645 *A.*2d 1165 (1994) (stating that "the school zone statute aims to protect children by reducing drugs around school" (citation, internal quotation marks and editing marks omitted)); *State v. Thomas,* 132 *N.J.* 247, 253, 624 *A.*2d 975 (1993) (noting that "*N.J.S.A.* 2C:35–7 was enacted to create a drug safety zone around schoolyards" (quoting *Official Commentary, supra;* internal quotation marks and editing marks omitted)); *State v. Ivory,* 124 *N.J.* 582, 594–95, 592 *A.*2d 205 (1991) ("Clearly, the Legislature intended to create drug-free zones of safety where children could be, learn and play free of the potential infection of drugs."); *State v. Soto,* 385 *N.J.Super.* 257, 263, 896 *A.*2d 1153 (App.Div.) (explaining that "the school zone statute aims to protect children by reducing drugs around schools" (citation, internal quotation marks and editing marks omitted)), *certif. denied,* 188 *N.J.* 491, 909 *A.*2d 725 (2006); *State v. Parker,* 335 *N.J.Super.* 415, 424, 762

A.2d 690 (App.Div.2000) (quoting *Maldonado, supra,* 137 *N.J.* at 582, 645 *A.*2d 1165). As this Court most recently noted in *State v. Lewis,* 185 *N.J.* 363, 370, 886 *A.*2d 643 (2005):

> The purpose of *N.J.S.A.* 2C:35–7 (school zone) ... is essentially ... to protect those, predominantly children, in and around schools and public parks from exposure to the drug culture and perils of drug trafficking. In furtherance of that purpose, the Legislature mandated severe punishment for those who possess or distribute drugs in the safety zones established by those statutes.

Finally, " 'it does not matter for purposes of [*N.J.S.A.* 2C:35–7] whether the school is public, private or parochial.' " *Ivory, supra,* 124 *N.J.* at 588, 592 *A.*2d 205 (quoting *Official Commentary, supra,* 9 *Crim. Just. Q.* at 157).

## B.

Properly framed by the context of a clear legislative mandate to protect children from the many ills drugs cause, the question presented in this appeal becomes deceptively simple: was defendant within one thousand feet of "school property" when he engaged in the illicit drug transactions that led to his arrest? In order to answer that question, the focus must shift to a more fundamental inquiry: does the school that triggered the designation of "school property" that thus defined the school zone within which defendant plied his illegal drug trade—the Goddard School—qualify as an "elementary or secondary school" under the statute? The majority concludes it is not; I disagree.

The path to the fair answer to that inquiry is familiar and well-trod:

> Our goal in construing a statute is to discern and effectuate the Legislature's intent. We start by considering the plain language of the statute. If the language is clear, we interpret the statute consistent with its plain meaning. If the meaning of the text is ambiguous, we construe a criminal statute in favor of the defendant. Nevertheless, in interpreting a criminal statute, whatever be the rule of construction, it is subordinate to the goal of effectuating the legislative plan as it may be gathered from the enactment when read in the full light of its history, purpose and context. Further, a court should strive to avoid statutory interpretations that lead to absurd or unreasonable results.
>
> [*Lewis, supra,* 185 *N.J.* at 369, 886 *A.*2d 643 (citations and internal quotation marks omitted).]

This process also is guided by core principles of statutory construction. First and foremost, the Legislature has mandated that,

[i]n the construction of the laws and statutes of this state, both civil and criminal, words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language.
[*N.J.S.A.* 1:1–1.]

This Court has acknowledged its obligation to adhere to that legislative mandate. *Burnett v. County of Bergen*, 198 *N.J.* 408, 421, 968 *A.*2d 1151 (2009) ("At the outset of New Jersey's statutory code, the Legislature reminds us that a statute's 'words and phrases shall be read and construed within their context' and 'given their generally accepted meaning.'" (quoting *N.J.S.A.* 1:1–1)). Also, when interpreting provisions of the *New Jersey Code of Criminal Justice*, additional considerations apply. As *Lewis, supra*, 185 *N.J.* at 369, 886 *A.*2d 643, explains, "[t]he Code of Criminal Justice specifically declares that 'when the language [of a provision] is susceptible of differing construction it shall be interpreted to further the general purposes stated in this section and the special purposes of the particular provision involved.'" (quoting *N.J.S.A.* 2C:1–2(c); citations omitted).

These principles inform the discussion of the discrete question presented in this appeal: for purposes of the school zone statute, *N.J.S.A.* 2C:35–7, what is an elementary school?

### C.

Although dictionary definitions of the term "school" vary widely, common usage of the term tells us that it is "[a]n institution for the instruction of children." *Webster's II New College Dictionary* 988 (1995); *Webster's Third New International Dictionary of the English Language—Unabridged* 2031 (1966). *N.J.S.A.* 2C:35–7, however, does not speak of any school; it governs drug transactions occurring within 1,000 feet of any "school property used for school purposes which is owned by or leased to *any elementary or*

*secondary school* or school board[.]" (emphasis supplied). That point is further made in the *Official Commentary, supra,* which notes that "[t]he definition of school property is generally derived from current law at *N.J.S.A.* 2C:33–15,[5] and is limited to elementary and secondary (junior high and high) schools." 9 *Crim. Just. Q.* at 157.

The record reflects that the Goddard School of North Brunswick opened its doors in 1999, "offer[ing] year round programs for children as young as six weeks to six years of age." In 2001, the Goddard School "started [its] private full day Kindergarten[.]" Its kindergarten program "holds 10 fulltime students and is taught by a Degreed, N.J. State Certified teacher[,]" and it "works with [the] local [school] district[ ] to ensure [the] child's smooth transition between Kindergarten and First Grade." It is uncontested in the record that the Goddard School unmistakably is identified by various large signs that identify it as a school—not as an academy or other place of instruction, but as a school.

In a more limited context, an "elementary school" frequently is defined as "[a] school for the first four to eight years of a child's formal education, *often including kindergarten.*" *The American Heritage® Dictionary of the English Language* (4th ed. 2004), *accessed via* http://www.answers.com/topic/primary-education (emphasis supplied). Given the breadth and scope the Legislature obviously intended the school zone law to have, it goes without saying that the Legislature certainly would conclude that a stand-alone kindergarten would be considered an "elementary school" and, hence, would come under the protection of *N.J.S.A.* 2C:35–7.[6]

---

[5] That statute proscribes the underage consumption of alcoholic beverages "in any school, public conveyance, public place, or place of public assembly, or motor vehicle[.]" *N.J.S.A.* 2C:33–15(a). The reference to that statute in the *Official Commentary,* however, is not helpful; neither that statute nor the few cases interpreting it have defined either a "school" or "school property."

[6] At oral argument, the Attorney General advised that there is at least one stand-alone public kindergarten in this State, one that cannot lose its protected character under *N.J.S.A.* 2C:35–7 simply because it is attended only by kinder-

If that is so—and no one credibly asserts otherwise—then the fact that the Goddard School also serves children of pre-school age should be irrelevant: it qualifies as a school under *N.J.S.A.* 2C:35–7 and, as a matter of plain logic, that status remains unaffected by the presence of younger children.

This result is further compelled by this Court's own pronouncements in the area of compulsory public education. The New Jersey Constitution requires that the State "provide for the maintenance and support of a thorough and efficient system of free public schools for the instruction of all the children in the State between the ages of *five* and eighteen years[,]" *N.J. Const.* art. VIII, § IV, ¶ 1 (emphasis supplied), and one need not resort to any authority for the proposition that five-year-olds attend kindergarten, not first grade. To underscore the point, this Court has determined that "full day kindergarten is an essential part of a thorough and efficient education" and that those "essential" kindergarten programs are designed for five-year-olds, those at the earliest age for whom the constitutional guarantee is extended. *Abbott v. Burke*, 153 *N.J.* 480, 502–03, 710 *A.*2d 450 (1998).[7] It is, therefore, ironic that this Court would determine that the provision of kindergarten is constitutionally required, yet deny those same kindergarten children the protections afforded by *N.J.S.A.*

---

garten students. Although it may be claimed that a stand-alone public kindergarten is protected under the school zone act because, as "property used for school purposes which is owned by or leased to . . . a [public] school board," *N.J.S.A.* 2C:35–7, it falls under another provision of the act, that claim simply begs the question: in light of the clear purpose of the school zone act to protect *all* schools, be they " 'public, private or parochial[,]' " *Ivory, supra,* 124 *N.J.* at 588, 592 *A.*2d 205 (quoting *Official Commentary, supra,* 9 *Crim. Just. Q.* at 157), there is no reason and even less logic supporting the proposition that the children at a public stand-alone kindergarten should receive the protection of the school zone act while the children at a stand-alone private or parochial kindergarten would not.

[7] Indeed, that decision further extended the constitutional obligation to require, in certain special needs school districts, the provision of pre-school to three- and four-year-olds, *id.* at 507–08, 710 *A.*2d 450, who, under the Court's decision today, also would be without the protections of the school zone law.

2C:35-7 simply because their kindergarten facility is not attached or part of a school offering first or later grades instruction.

## II.

The intent of *N.J.S.A.* 2C:35-7 is unmistakable: it is meant to protect school children without an arbitrary cut-off at first grade from which kindergarten is excluded. Kindergarten is a constitutionally required grade in our system of free public schools, yet the majority's decision denies kindergarten students the protection it extends to those in the grade immediately above. That result lacks logic and common sense. It also runs counter to federal authority construing 21 *U.S.C.* § 845a—now codified at 21 *U.S.C.* § 860—a statute after which the Comprehensive Drug Reform Act of 1987 was "roughly modeled." *Official Commentary, supra,* 9 *Crim. Just. Q.* at 157. *See United States v. Echevaria,* 995 *F.*2d 562, 564 (5th Cir.1993) (holding that private kindergarten satisfied definition of "elementary school" in 21 *U.S.C.* § 860, thereby triggering enhanced federal sentencing provisions for drug trafficking within 1,000 feet of elementary school).

Because the protections afforded by *N.J.S.A.* 2C:35-7 rationally and logically extend to those in kindergarten, I must dissent from the majority's decision holding otherwise. Furthermore, in light of the majority's ruling, I add a straightforward plea: that the Legislature act promptly to amend *N.J.S.A.* 2C:35-7 and eliminate this gap in needed protection.

*For affirmance*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, HOENS, and STERN—6.

*For reversal*—Justice RIVERA-SOTO—1.