**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3151-17T1

IN THE MATTER OF DENIAL OF
CEDAR KNOLLS 2006 LLC'S
HAZARDOUS DISCHARGE SITE
REMEDIATION FUND INNOCENT
PARTY GRANT APPLICATION WITH
REGARD TO REIMBURSEMENT OF
REMEDIAL ACTION COSTS.

_____

Argued October 22, 2018 – Decided December 5, 2018

Before Judges Sabatino, Sumners and Mitterhoff.

On appeal from the New Jersey Department of Environmental Protection.

Jeffrey W. Cappola argued the cause for appellant Cedar Knolls 2006 LLC (Wilentz, Goldman & Spitzer, PA, attorneys; Gordon J. Golum, of counsel; Jeffrey W. Cappola and Yin Zhou, on the brief).

Mark S. Heinzelmann, Deputy Attorney General, argued the cause for respondent Department of Environmental Protection (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Mark S. Heinzelmann, on the brief).

PER CURIAM

Cedar Knolls 2006, LLC appeals from the May 1, 2018 final agency decision of the New Jersey Department of Environmental Protection (DEP) denying its request for payment of future remedial costs under the former innocent party grant program through the Brownfield and Contaminated Site Remediation Act (Brownfield Act), N.J.S.A. 58:10B-1 to -31. We affirm.

This matter returns to us following our September 20, 2017 decision reversing the November 2, 2015 final agency decision of the DEP that Cedar Knolls did not qualify as a "person" under N.J.S.A. 58:10B-6(a)(4) to submit an innocent party grant to pay for the remediation of contaminated property that Cedar Knolls owns. Cedar Knolls 2006, LLC v. NJDEP, No. A-1405-15 (App. Div. Sept. 20, 2017). On the day of our ruling, Cedar Knolls reached out to the agency to reactivate its previously denied grant request. Over the next three months, the DEP reviewed Cedar Knolls' invoices and other documents submitted to support the company's grant request.

On December 26, 2017, the DEP informed Cedar Knolls that its application was approved with recommended funding of $97,837.78 for past remedial costs, and "[fifty percent] of eligible costs related to future work may be added to the total recommendation amount." (emphasis added). The DEP requested that Cedar Knolls "[k]indly forward a Scope of Work and Cost

Estimate to [them] for [the] proposed work."  Two days later, Cedar Knolls

provided the DEP with documentation for the estimated costs of future work

totaling $2,159,466.38.

On January 9, 2018, the DEP issued a letter to Cedar Knolls stating it

"received notice of the Appellate [Division's September 20, 2017] decision to

reverse the [DEP's] November 2, 2015 denial" of Cedar Knolls' application and,

therefore, "revisited the Innocent Party Grant . . . request that was submitted . .

. ," and offered the company the original $97,837.78 in grant funds for incurred

costs, but made no mention of future remedial costs.

On January 16, the Legislature passed Assembly Bill 1954 L. 2017, c. 353

(the amendment) into law, which among other things, eliminated the innocent

party grant program on the day of passage.  The amendment stated:

> This act shall take effect immediately and shall apply
> to any application for financial assistance or a grant
> from the [innocent party grant program] pending before
> [the DEP] on the effective date of this act, or submitted
> on or after the effective date of the act, but shall not
> apply to any application determined to be technically
> eligible and recommended for funding by [the DEP]
> and pending before the New Jersey Economic
> Development Authority [(EDA)] on the effective date
> of this act.
>
> [L. 2017, c. 353 § 6. (emphasis added).]

Almost a month later on February 20, the Attorney General's Office, on behalf of the DEP, sent an e-mail to Cedar Knolls' counsel acknowledging receipt of the company's documents – forwarded to the agency on December 28 – supporting future remedial action, but advising that "the descriptions and total sums for the [future] work were administratively incomplete . . . [and] required significantly more detail on the specific tasks to be performed, rather than general statements and lump sums."  As an example, the DEP indicated that the mass excavation work portion of Cedar Knolls' request "should have been broken down into tasks and sub-tasks, which would then outline the specific cost and time (days/hours) associated with personnel (contractor and sub-contractor), labor, equipment, materials, etc.," to indicate how the total amount was being calculated.  The email stated further that, in light of the amendment and because the future remedial work was requested with the application for past work, the DEP "elected to review and approve the application for the [past] work and present it to the EDA on an expedited basis" in lieu of denying the entire application.  At the same time, the DEP determined the application for future remedial costs was denied as incomplete; the first time Cedar Knolls was made aware its documentation for future remedial costs was deficient.

4

On May 1, Cedar Knolls was formally notified of the agency's decision denying its request for future remedial costs.[1]

In this appeal, Cedar Knolls contends that its application was grandfathered under the amendment to the Brownfield Act, and thus, DEP's denial of its future remedial funding request was arbitrary, capricious, and unreasonable. In the alternative, Cedar Knolls asserts that, due to equitable considerations, the amendment should not be applied prospectively to deny its request.

To address Cedar Knolls' grandfather clause contention, we must examine the DEP's interpretation and application of the amendment. It is well settled that we "afford substantial deference to an agency's interpretation of a statute that the agency is charged with enforcing." Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 196 (2007). Nevertheless, "we are 'in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue.'" Utley v. Bd. of Review, Dep't of Labor, 194 N.J. 534, 551 (2008) (citations omitted). Thus, our review of a question of law is de novo. Mount v.

---

[1] Cedar Knolls' initial Notice of Appeal reflected that the final agency decision was the February 20 email. However, an Amended Notice of Appeal was later filed clarifying that the May 1 notification was the agency's final decision.

Bd. of Trs., Police & Firemen's Ret. Sys., 233 N.J. 402, 419 (2018) (citation omitted).

It is well settled that the primary purpose of "statutory interpretation is to determine and 'effectuate the Legislature's intent.'" State v. Rivastineo, 447 N.J. Super. 526, 529 (App. Div. 2016) (quoting State v. Shelley, 205 N.J. 320, 323 (2011)). We start with considering "the plain 'language of the statute, giving the terms used therein their ordinary and accepted meaning.'" Ibid. And where "[t]he Legislature's chosen words lead to one clear and unambiguous result, the interpretive process comes to a close, without the need to consider extrinsic aids." Ibid. Hence, we do "not 'rewrite a plainly-written enactment of the Legislature [or] presume that the Legislature intended something other than that expressed by way of the plain language.'" Ibid. (quoting Marino v. Marino, 200 N.J. 315, 329 (2009) (alteration in original)).

Applying these rules of statutory interpretation, we are constrained to conclude that the DEP's interpretation of the amendment is consistent to the statute's plain language. The amendment grandfathered applications that met certain criteria. To receive innocent party grant funding after the amendment's effective date of January 16, 2018, the application must: (1) have been previously submitted to the DEP; (2) be technically eligible; (3) have been

recommended by the DEP for funding; and (4) be pending before the EDA. L. 2017, c. 353 §6.

There is no question that Cedar Knolls' application for an innocent party grant was submitted to the DEP before the amendment's effective date, and as to whether the application was technically eligible, we conclude that it was. The Legislature did not define "technically eligible," nor is there any guidance in the amendment's legislative history. See N.J. S. Comm. Statement, S.B. 1237, (Dec. 11, 2017); N.J. Assemb. Comm. Statement, A.B. 1954, (Dec. 11, 2017). However, we are guided by examination of the ordinary and accepted meaning of "technically" and "eligible." The word "technically" is defined as "with regard to or in accordance with a strict or literal interpretation of something" such as a rule. Merriam-Webster's Collegiate Dictionary (11th ed. 2003). To be "eligible" means that the application was "fit and proper to be selected or to receive a benefit." Black's Law Dictionary (9th ed. 2009).

Innocent party grants were governed by N.J.A.C. 7:26C-11.2, which stated an applicant "may apply for a loan or grant from the Hazardous Discharge Site Remediation Fund [(HDSRF)] by submitting to the [DEP] a completed form and following the instructions, both of which are found on the [DEP's] website." The website contains a HDSRF Form that required, among other things,

"[d]etailed remediation Work Proposal with detailed description of remediation and itemized cost estimate[s]."[2]

When the DEP reviews and deems a HDSRF grant application, such as for an innocent party grant, eligible for funding, it is referred to the Economic Development Authority (EDA). See N.J.A.C. 19:31–8.9; N.J.A.C. 7:26C–11.2. The EDA then takes final action on all eligible grant applications. See N.J.A.C. 19:31–8.9. Thus, an application is "technically eligible" under the amendment, when, prior to January 16, 2018, it was submitted and recommended to the EDA for funding.

After we determined that the DEP erred in not considering Cedar Knolls' application for an innocent party grant, the company immediately submitted its application seeking past and future remedial costs. But on December 26, 2017, the DEP only recommended the portion of the application that covered past remedial costs. The DEP reserved judgment on approving the amount sought for future remedial costs, and advised Cedar Knolls to submit further documentation for those costs.[3] Cedar Knolls did so; providing the Scope of

---

[2] Following the passage of amendment, this version of the form is no longer available on the website. But a copy was submitted in Cedar Knolls' appendix.

[3] There was nothing in the Brownfield Act or regulatory scheme that proscribed this approach.

Work and Cost Estimate just two days later. The fact that the DEP advised Cedar Knolls that it may receive additional funding for future costs leads us to conclude that the company's application was technically eligible for innocent grant funding under the Brownfield Act.

Cedar Knolls, however, has not satisfied the amendment's criteria that prior to January 16, 2018, its application for future remedial costs was recommended for funding by the DEP and was pending before the EDA. The record demonstrates that Cedar Knolls acted immediately to reactivate its application following our decision and promptly submitted additional documentation concerning its future remedial costs after being notified by the DEP that its submission was deficient. There is, however, no indication that the DEP's actions were arbitrary, capricious, or unreasonable in not approving the application for funding or submitting it to the DEP. Hence, Cedar Knolls' application for future costs was not grandfathered and approved for funding prior to the elimination of the innocent party grant program.

We further conclude there is no merit to Cedar Knolls' contention that equitable principles warrant funding of its future remedial costs. The company contends that retroactively applying the amendment to deny it additional funding

is manifestly unjust under Nobrega v. Edison Glen Assocs., 167 N.J. 520 (2001).

We disagree.

In Nobrega, the Court ruled that

> the implied doctrine of separation of powers prohibits
> retroactive legislation that mandates a rule of decision
> in a pending case, United States v. Klein, [80 U.S. 128,
> (1871)], or seeks to overturn a final decision of a . . .
> court[,] Plaut v. Spendthrift Farm, Inc., 514 U.S. 211
> (1995).
>
> [167 N.J. at 539.]

There was no pending court decision when the Legislature decided to eliminate the program.

Our September 20, 2017 decision determined that Cedar Knolls was eligible to apply because the company qualified as a "person" under the Brownfield Act. We never determined, nor was the issue before us, that Cedar Knolls was actually entitled to funding under the innocent party grant program. The innocent party grant program was created by the Legislature, which has the authority to modify or eliminate the program by subsequent legislative action.

The Legislature has the authority to choose to make laws retroactive. In Oberhand v. Director, Division of Taxation, 193 N.J. 558 (2008), the Court explained:

It is a fundamental principle of jurisprudence that retroactive application of new laws involves a high risk of being unfair. There is general consensus among all people that notice or warning of the rules that are to be applied to determine their affairs should be given in advance of the actions whose effects are to be judged by them. The hackneyed maxim that everyone is held to know the law, itself a principle of dubious wisdom, nevertheless presupposes that the law is at least susceptible of being known. But this is not possible as to law which has not been made.

Nevertheless, if the Legislature expresses an intent that the statute is to be applied retroactively, the statute should be so applied. The legislative intent may either be expressed in the language of the statute or implied in that "retroactive application may be necessary to make the statute workable or to give it the most sensible interpretation."

[Id. at 570-71 (internal citations omitted).]

There are, however, two exceptions to retroactive application: (1) when it would be unconstitutional, or (2) when it would result in manifest injustice. Id. at 571. Cedars Knolls limits its contention to the manifest injustice exception. The argument is unpersuasive.

Cedar Knolls argues that, having submitted its application three years prior to the amendment, its expectations "would be severely upset" because it had a "reasonable expectation[] regarding its eligibility for financial assistance in order to complete the remainder of the remediation at the [p]roperty,"

following this court's 2017 decision. Additionally, Cedar Knolls contends that despite the debate surrounding the amendment, they "reasonably relied on the [i]nnocent [p]arty [g]rant program and the [DEP's] statements through the end of December 2017 regarding the inclusion of future remedial action costs," to its detriment and that retroactively applying the amendment would result in manifest injustice.

The DEP counters that it "worked diligently to review Cedar Knolls' application for past costs," following this court's reversal and the subsequent denial of future remedial costs was in line with the amendment's prospective application.

Given our previous ruling in favor of Cedar Knolls, we are sensitive to its contention that it had reasonable expectations to receive funding for the entirety of its remediation costs. Yet, we do not conclude that those expectations warrant the company's entitlement to future remedial costs, given the Legislature's action unfolded in the public eye and clearly directed an end of the innocent party grant program.

The Legislature debated Assembly Bill 1954 for about two years prior to its enactment. See A. 1954 (Jan. 27, 2016); A. 1954 (June 6, 2016); A. 1954 (Dec. 11, 2017); A. 1954 (Jan. 16, 2018). While the bill's third revision called

for reduced funding for the innocent party grant program, the Legislature later decided to completely eliminate the program. A. 1954 (Jan. 16, 2018). Even though the DEP knew there was a bill pending, we know of no obligation that the agency had to inform Cedar Knolls of pending legislation that may or may not be passed. Significantly, there is nothing in the record indicating that the DEP acted in bad faith and delayed its review of Cedar Knolls' application to conserve State remediation funds by not recommending and submitting future remedial costs to the EDA for funding.

Similarly, Cedar Knolls contends the DEP's denial of future remedial costs "smacks of unfairness" and violates the "square corners" doctrine because the agency invited them to submit future costs and they relied in good faith on those statements. Again, we are unpersuaded.

"When dealing with the public, 'government must "turn square corners" rather than exploit litigational or bargaining advantages that might otherwise be available to private citizens.'" Rudbart v. North Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 378 (1992) (quoting W.V. Pangborne & Co. v. New Jersey Dep't of Transp., 116 N.J. 543, 561 (1989)). "The government must act fairly and 'with compunction and integrity.'" Id. The doctrine is "always subject

to the guiding principles of fundamental fairness." Milligan v. Dir., Div. of Taxation, 29 N.J. Tax 381, 399 (2016).

Cedar Knolls' "square corners" contention fails for the same reason that we rejected its manifest injustice contention. Cedar Knolls' application was forced to weather a delayed consideration of its application because it had to litigate the DEP's decision that it was not eligible to apply for an innocent party grant. Yet, there is nothing in the record that suggests the DEP did anything untoward in its consideration of Cedar Knolls' application and, specifically, its request for future remedial costs once we determined Cedar Knolls had the right to obtain a grant. The elimination of the innocent party grant program was through legislative action following our decision, not through the initiative of the DEP. The agency had no control over the Legislature, a separate branch of government, which authorizes funding for governmental subsidy of environmentally contaminated property. N.J.S.A. 58:10B-6.

Lastly, this court does not have the authority to second-guess the fiscal decisions of the Legislature, which has the sole power and responsibility to raise revenue and direct funding for the operation of our state government. N.J. Const. art. VIII, § 2, ¶ 2. See Cty. of Camden v. Byrne, 82 N.J. 133, 149 (1980) (holding "[t]here can be no redress in the courts to overcome either the

Legislature's action or refusal to take action pursuant to its constitutional power over state appropriations."); see also O'Neil v. State Highway Dept., 50 N.J. 307, 315 (1967).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION