**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2844-16T3

IN THE MATTER OF HAZARDOUS
DISCHARGE SITE REMEDIATION
FUND REQUEST FOR THE INNOCENT
PARTY GRANT APPLICATION.

_____

Argued January 10, 2019 – Decided April 25, 2019

Before Judges Whipple and DeAlmeida.

On appeal from the New Jersey Department of Environmental Protection.

George J. Tyler, argued the cause for appellant RAW, Inc. (Tyler & Carmeli, PC, attorneys; George J. Tyler, of counsel and on the brief; James Aversano III, on the brief).

Bethanne S. Prugh, Deputy Attorney General, argued the cause for respondent Department of Environmental Protection (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Mark S. Heinzelmann, Deputy Attorney General, on the brief).

PER CURIAM

Appellant RAW, Inc., a/k/a Roxbury Auto Wreckers (RAW), appeals from the August 29, 2017 final agency decision of the Department of Environmental Protection (DEP) denying its application for an innocent party grant (IPG) from the Hazardous Discharge Site Remediation Fund (Fund). We dismiss the appeal as moot.

I.

RAW is the owner of real property in Morris County. It is undisputed that hazardous substances were discharged in both the soil and groundwater at the property, necessitating remediation under the Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 to -23.24. There is contamination from both historic fill of a canal that once crossed the property and RAW's use of the parcel for commercial purposes.

On July 6, 2016, RAW filed an application with DEP for an IPG pursuant to the Brownfield and Contaminated Site Remediation Act (Act), N.J.S.A. 58:10B-1 through -31, in the amount of $177,850, to cover a portion of the cost of investigating and remediating only the historic fill at the property. At the time of the application, the Act authorized grants to an "innocent party," as that term was defined in N.J.S.A. 58:10B-6(a)(4) (2010). To receive funding, an applicant had to establish, among other criteria, that the hazardous substances

to be remediated were not used by the applicant at the property and that the applicant did not discharge any hazardous substances at the area where the historic discharge was discovered. N.J.S.A. 58:10B-6(a)(4) (2010). When DEP determined that an IPG grant application was eligible for funding, it would recommend the grant to the New Jersey Economic Development Authority (EDA) to be funded. See N.J.A.C. 19:31-8.9. EDA had the discretion to take final action to issue the grant. Ibid.

On January 27, 2017, DEP denied RAW's IPG application. The agency provided a written determination that RAW "ha[d] not shown that the contamination from [its] operations is separate and distinct from the contamination caused by historic fill." In addition, DEP found that RAW "ha[d] not shown that the contaminants found in the historic fill area were not caused by [its] operations[,]" leaving the agency "unable to determine if the contamination that is the subject of the IPG application was caused by RAW, Inc. operations or historic fill." In light of these findings, DEP did not review the financial aspects of RAW's application or recommend it to EDA for funding. On August 29, 2017, DEP denied RAW's request for reconsideration.

This appeal followed. RAW argues that DEP's final agency decision is contrary to a statute and DEP regulations defining historic fill. In addition,

3

RAW argues that DEP's factual determinations with respect to the contamination at the property are not supported by substantial credible evidence.

Before the parties filed briefs, on January 16, 2018, the Legislature enacted L. 2017, c. 353, which amended the Act to, among other things, eliminate the IPG program (the Amendment). Section 6 of the Amendment provides:

> This act shall take effect immediately and shall apply to any application for financial assistance or a grant from the [Fund] pending before the [DEP] on the effective date of this act, or submitted on or after the effective date of the act, but shall not apply to any application determined to be technically eligible and recommended for funding by the [DEP] and pending before the [EDA] on the effective date of this act.
>
> [L. 2017, c. 353, § 6.]

DEP argues that the Amendment renders RAW's appeal moot because its application was neither recommended for funding by DEP nor pending before EDA as of January 16, 2018. In addition, DEP argues that its technical review of RAW's application was not completed. Once the agency determined that RAW did not meet the statutory criteria for eligibility, it did not undertake the "time-consuming process" of analyzing the financial aspects of the application necessary to recommend it for funding by the EDA. Thus, the agency argues, RAW cannot be awarded an IPG, even if successful on appeal, because there is

A-2844-16T3

no legislative authorization for DEP to continue processing RAW's application or to expend public funds on a grant to RAW.

RAW argues its appeal is not moot because Section 6 does not expressly exclude funding for applications that were denied by DEP but under judicial review at the time the Amendment was enacted. In addition, RAW contends that its application falls within the grandfather provision of Section 6 because had DEP correctly applied the law, it would have recommended the application for funding to the EDA, and the application would have been pending there on January 16, 2018. Finally, RAW argues that applying the Amendment to its IPG application would constitute a manifest injustice.

## II.

Our courts "refrain from rendering advisory opinions, from deciding moot cases, or generally from functioning in the abstract, and . . . decide only concrete contested issues conclusively affecting adversary parties in interest[.]" N.J. Tpk. Auth. v. Parsons, 3 N.J. 235 (1949) (quotation omitted); see also N.Y. Susquehanna & W. Ry. Corp. v. Dep't of Treasury, Div. of Taxation, 6 N.J. Tax 575, 582 (Tax 1984), aff'd, 204 N.J. Super. 630 (App. Div. 1985). A case is moot "when the decision sought in a matter, when rendered, can have no practical effect on the existing controversy." Greenfield v. N.J. Dep't of Corrs.,

A-2844-16T3

382 N.J. Super. 254, 258 (App. Div. 2006) (quoting N.Y. Susquehanna, 6 N.J. Tax at 582).

The mootness of RAW's appeal depends on whether RAW's application falls within the grandfather provision in Section 6. It is well settled that the primary purpose of "statutory interpretation is to determine and 'effectuate the Legislature's intent.'" State v. Rivastineo, 447 N.J. Super. 526, 529 (App. Div. 2016) (quoting State v. Shelley, 205 N.J. 320, 323 (2011)). We start by considering "the plain 'language of the statute, giving the terms used therein their ordinary and accepted meaning.'" Ibid. (quoting Shelley, 205 N.J. at 323). Where "the Legislature's chosen words lead to one clear and unambiguous result, the interpretive process comes to a close, without the need to consider extrinsic aids." Ibid. (quoting Shelley, 205 N.J. at 323). We do "not 'rewrite a plainly-written enactment of the Legislature [or] presume that the Legislature intended something other than that expressed by way of the plain language.'" Id. at 529-530 (alternation in original) (quoting Marino v. Marino, 200 N.J. 315, 329 (2009)).

The plain language of Section 6 renders RAW's appeal moot. The Legislature exercised its prerogative to eliminate the IPG program and grandfathered only those IPG applications that were: (1) determined by DEP to

be technically eligible; (2) recommended for funding by DEP; and (3) pending before EDA on January 16, 2018. RAW's application satisfied none of these criteria. On January 16, 2018, DEP had determined that RAW's application did not satisfy the then-controlling statutory eligibility requirements for an IPG. The agency, therefore, did not complete its review of the application and did not recommend it for funding to the EDA.

We do not agree with RAW's argument that the Legislature impliedly included in Section 6 IPG applications erroneously denied by DEP and under judicial review as of January 16, 2018. There is nothing in Section 6 remotely suggesting such an interpretation of the statute was intended. To the contrary, the Legislature defined in clear terms the category of grant applications for which funding was preserved. Only those IPG applications that advanced to EDA with a recommendation for funding from DEP are authorized to proceed. We cannot rewrite the unambiguous provisions of Section 6 to say, in effect, that funding is authorized for applications that "should have been" found technically eligible and recommended for funding by DEP on the effective date of the statute. Nor can we find in Section 6 authorization for DEP to expend funds to complete its review of the financial aspects of RAW's application, were we to determine that the agency erred in its interpretation of the statutory

7

eligibility criteria. It is reasonable to conclude that the Legislature was aware of the possibility that at the time that Section 6 was enacted DEP had erroneously denied one or more IPG applications and that the agency's error would be discovered after January 16, 2018. Yet, the Legislature did not include language in Section 6 preserving funding for those circumstances.

Nor do we agree that dismissal of RAW's appeal would constitute a manifest injustice. The manifest injustice doctrine was examined by our Supreme Court in Oberhand v. Director, Div. of Taxation, 193 N.J. 558 (2008). Although the Court did not issue a majority opinion, three Justices held that the doctrine allows a court to bar retroactive application of a statute as an equitable remedy "to prevent unfair results that do not necessarily violate any constitutional provision." Oberhand, 193 N.J. at 572 (quoting State Troopers Fraternal Ass'n v. State, 149 N.J. 38, 54 (1997)). A fourth Justice issued a concurring opinion stating that the doctrine allows a judicial remedy where retroactive application of a statute would violate the constitutional right to fundamental fairness and due process of law. Id. at 575 (Albin, J., concurring).

> Although no opinion in Oberhand was joined by four Justices, a majority of the Court held that the retroactive application of a . . . statute can be precluded by judicial action in circumstances where the retroactive [application] is manifestly unjust – whether

> under a common law notion of fairness or as a matter of State Constitutional principle.
>
> [Leger v. Dir., Div. of Taxation, 29 N.J. Tax 354, 366 (Tax 2016).]

Before giving relief under the doctrine a court must "weigh[] the competing factors of the public interest in the retroactive application of the amended statute, the affected parties' reliance on the previous law, and the consequences of that reliance." Id. at 365. The court may block retroactive application of a statute if doing so would be "harsh and unfair[.]" Oberhand, 193 N.J. at 574.

Here, the Amendment does not have a provision applying the statute retroactively. To the contrary, the removal of authorization to process and fund IPGs is effective upon enactment of the Amendment. The Legislature did not defund grants awarded prior to the statute's date of enactment. Instead, Section 6 authorizes DEP and EDA to process and fund IPG applications that have advanced to an identified point in the approval process, but for which funding was not yet finalized as of the date of enactment of the statute. RAW's IPG application had not advanced far enough when the Amendment was enacted to fall within Section 6.

Moreover, prior to enactment of the Amendment, RAW did not have a right to an IPG, even if its application technically complied with the statute.

Funding of an IPG was dependent on approval by the members of the EDA. A regulation established the process for EDA review of IPGs recommended for funding by DEP:

> Applications are processed through several layers of staff review, and may then be recommended for consideration and official action of the Authority Members at a public meeting. Within [forty-five] days of the receipt of a completed application, a determination will be made to recommend approval to the Members or deny the application. The applicant has no right to have its application presented to the Members.
>
> [N.J.A.C. 19:31-8.9(h).]

At the time the Amendment was enacted, RAW had only an expectation that its application might be found to be technically complete, might be presented by EDA staff to the authority's members, and that those authority members might decide to approve funding.

The Amendment, therefore, differs from the statutes at issue in Oberhand, which applied a tax to estates of decedents who died six months before enactment of the statute and, as a result, did not have the opportunity to revise their wills to avoid the tax, 193 N.J. at 565-66, and Leger, which applied a tax to lottery winnings from prizes awarded six months prior to enactment of the

statute when such winnings were tax exempt, 29 N.J. Tax at 359. We do not view the manifest injustice doctrine to apply in the circumstances before us.

We also note that the Amendment reflects the exercise of the Legislature's fundamental constitutional authority to make fiscal decisions. The Legislature has the sole power and responsibility to raise revenue and appropriate funds for the operation of our State government. N.J. Const. art. VIII, §2, ¶2; see City of Camden v. Byrne, 82 N.J. 133, 149 (1980) (holding "[t]here can be no redress in the courts to overcome either the Legislature's action or refusal to take action pursuant to its constitutional power over state appropriations"). The prohibition on the expenditure of State funds without legislative authorization is "the center beam of the State's fiscal structure." Byrne, 82 N.J. at 146. The Legislature decided not to fund IPGs as of the effective date of the Amendment, with limited exceptions not applicable here. Nothing in Oberhand suggests that the manifest injustice doctrine may be applied to, in effect, authorize the expenditure of public funds in the face of express legislative intent to the contrary.

To the extent we have not specifically addressed any of RAW's remaining arguments with respect to mootness, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11

A-2844-16T3