**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1342-17T3

NEWARK FIREFIGHTERS
UNION, INC.,

      Petitioner-Appellant,

v.

BOARD OF TRUSTEES, POLICE
AND FIREMEN'S RETIREMENT
SYSTEM,

      Respondent-Respondent.

_____

      Argued January 22, 2019 – Decided May 6, 2019

      Before Judges Haas, Sumners and Mitterhoff.

      On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, Loc No. 3-21101.

      Craig S. Gumpel argued the cause for appellant.

      Michael A. D'Anton argued the cause for respondent City of Newark (Chasan Lamparello Mallon & Cappuzzo, PC, attorneys; Michael A. D'Anton, of counsel and on the brief).

Robert S. Garrison, Jr., Deputy Attorney General, argued the cause for respondent Board of Trustees (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Robert S. Garrison, Jr., on the brief).

PER CURIAM

The Board of Trustees, Police and Firemen's Retirement System (the Board) rendered a Final Administrative Determination (Final Decision) that declined to assess a delinquent enrollment penalty against the City of Newark (Newark) for forty-nine out of the fifty-seven Police and Firemen's Retirement System (PFRS) pension enrollment applications by firefighter members of the petitioner Newark Firefighters Union, Inc. (NFU), which it claimed were untimely submitted. The Final Decision turned on the Board's refusal to declare there was an inconsistency between a Board regulation, N.J.A.C. 17:1-3.1(b), and a statute, N.J.S.A. 43:16A-15.1, which governs the time within which a PFRS pension enrollment application must be submitted to the Division of Pension and Benefits (the Division). For the reasons that follow, we affirm for the reasons set forth in the Final Decision except for one firefighter for whom we conclude Newark must pay an enrollment penalty under N.J.S.A. 43:16A-15.1 for the untimely submission of his PFRS pension enrollment application.

A-1342-17T3

I.

Between October 2011 and November 2013, the City of Newark appointed four classes of firefighters. On July 2, 2014, NFU's counsel wrote to the Division's Enrollment Bureau questioning Newark's compliance with the pension statutes regarding the firefighters' PFRS enrollment, and requested a meeting to address these concerns. A few weeks later, counsel sent a follow-up letter to the Enrollment Bureau, concerning the failure to address PFRS enrollment status of numerous NFU members, and raising additional issues with respect to enrollment of certain firefighters.

When counsel did not receive any response from the Division, counsel wrote a letter on July 23 to the Director of the Division reiterating NFU's request for a meeting to address ongoing enrollment issues in the PFRS, and included the July 2 and July 23 letters. Neither the Enrollment Bureau nor the Director responded to the letters or NFU's request for a meeting.

Almost a year later, on May 29, 2015, NFU filed a Superior Court complaint against Newark and the Division. The complaint sought: 1) the immediate PFRS enrollment of any unenrolled firefighters; 2) a declaration that the firefighters' PFRS enrollment was untimely and a delinquent enrollment penalty should be assessed against Newark; and 3) the declaration that the

pension regulation, N.J.A.C. 17:1-3.1(b) permitting fourteen months for enrollment without triggering a delinquency is null and void as contrary to law.

Following motions for summary judgment by both parties, the trial court dismissed the action for lack of jurisdiction and directed that the Board hear the matter upon application.

In response, NFU petitioned the Board, arguing that N.J.A.C. 17:1-3.1 is inconsistent with N.J.S.A. 43:16A-15.1. N.J.S.A. 43:16A-15.1, states, in relevant part:

> a. In the case of any person who (1) was required to become a member of the retirement system as a condition of employment, and whose application for enrollment in the retirement system or whose application for transfer from one employer to another within the system was filed beyond the effective date for his compulsory enrollment in the system or his transfer within the system or (2) is eligible for membership on the basis of special legislation, such person shall be required to purchase membership credit for his compulsory coverage by paying into the annuity savings fund the amount required by applying, in accordance with section 15 of chapter 255 of the laws of 1944, his full rate of contribution on his current base salary subject to the retirement system for each year of previous service during which he was required to have been a member.
>
> b. If more than 1 year has elapsed from the time that contributions would have been required from such person, 1/2 of the employee's cost, established by the computation provided by subsection a. of this section,

will be required of his employer and shall be included in the next budget subsequent to the certification of this special liability by the retirement system. The amount certified by the system shall be payable by the employer to the pension accumulation fund and shall be due and owing to the system even if the employee is no longer in the employ of the employer by the date such moneys are to be paid to the system.

Further N.J.A.C. 17:1-3.1 states, in relevant part:

(a) Employers have a statutory responsibility to enroll employees on a timely basis. Employers are required to use the available online enrollment applications provided through the Employer Pensions and Benefits Information Connection (EPIC), to enroll newly hired employees.

. . . .

2. When an employer fails to file an application for enrollment even though the employee and employer have been advised of the compulsory nature of enrollment, the employer shall pay the employee contributions required as a result of a delayed enrollment, as required by the governing statute and pursuant to (b) and (c) below.

. . . .

(b) For the purpose of establishing an employer's liability for payment of the employee contributions on delinquently filed enrollment applications, as well as the member's requirement to prove insurability, one year shall cover the 12-month period elapsing between the employee's date of enrollment or transfer and the date the enrollment application or report of transfer is received by the Division.

Specifically, NFU claimed that the employee's date of enrollment or transfer as used in N.J.A.C. 17:1-3.1 is inconsistent with the requirement in N.J.S.A. 43:16A-15.1 that employer delinquency is measured from the time that contributions would have been required. Moreover, NFU argued that N.J.S.A. 43:16A-15.1 requires a delinquent enrollment penalty if pension deductions were not started within one year from the compulsory date of contributions, whereas N.J.A.C. 17:1-3.1(b) only requires the application to be filed.

Prior to the Board's consideration of the matter, the Division reviewed the circumstances regarding the enrollment of eleven of the fifty-seven firefighters at issue, and on April 5, 2017, determined that Newark would be assessed a delinquent enrollment penalty for only eight of the firefighters whose applications were untimely filed by Newark. NFU challenged the finding that there was no delinquent enrollment penalty for the other three firefighters – Courtney Benjamin, Christopher Dugan and Danny Espaillat – claiming their applications were incomplete when filed and were not completed within one year thereafter.

On June 19, the Board denied NFU's request, but noted that it would consider, aside from the delinquent enrollment issue, equitable arguments regarding the PFRS enrollment of forty-nine firefighters who had sought to

6

apply the delinquent enrollment statute, N.J.S.A. 43:16A-15.1, to their respective enrollments in the PFRS.

NFU requested a reconsideration of the Board's denial, seeking relief on equitable grounds, independent of the delinquent enrollment issue. The Board, however, denied the reconsideration request and issued a Final Administrative Determination (Final Decision) affirming its June 19 determination that there should be no enrollment penalty for forty-nine firefighters because N.J.A.C. 17:1-3.1(b) is consistent with N.J.S.A. 43:16A-15.1.

## II.

Essentially repeating the arguments it made before the Board – that N.J.A.C. 17:1-3.1 is inconsistent with N.J.S.A. 43:16A-15.1 and that Newark is obligated to pay an enrollment penalty for forty-nine firefighters[1] – NFU appeals arguing:

> POINT I
>
> THE BOARD OF TRUSTEES OF THE POLICE AND FIREMEN'S RETIREMENT SYSTEM'S FINAL ADMINISTRATIVE DETERMINATION WAS ARBITRARY, CAPRICIOUS AND UNREASONABLE BECAUSE IT INCORRECTLY INTERPRETED THE GOVERNING STATUTE,

---

[1] Initially, the number was fifty-seven firefighters. The Division, as recognized in the Final Decision, determined that Newark should be assessed the penalty for eight firefighters.

[N.J.S.A.] 43:16A-15.1, TO REQUIRE THAT THE EMPLOYER LIABILITY FOR AN ENROLLMENT DELINQUENCY BE BASED ON WHETHER THE APPLICATION FOR ENROLLMENT WAS WITHIN 1 YEAR OF THE COMPULSORY DATE OF ENROLLMENT INSTEAD OF WHETHER CONTRIBUTIONS COMMENCED WITHIN 1 YEAR OF THE PFRS COMPULSORY ENROLLMENT DATE.

POINT II

THE BOARD OF TRUSTEES OF THE POLICE AND FIREMEN'S RETIREMENT SYSTEM'S FINAL ADMINISTRATIVE DETERMINATION IS NOT ENTITLED TO DEFERENCE BECAUSE THE BOARD'S INTERPRETATION OF THE GOVERNING STATUTE, [N.J.S.A.] 43:16A-15.1, IMPERMISSIBLY ALTERS THE LEGISLATIVE ENACTMENT AND FRUSTRATES THE POLICY EMBODIED IN THE STATUTE.

POINT III

THE BOARD OF TRUSTEES OF THE POLICE AND FIREMEN'S RETIREMENT SYSTEM'S FINAL ADMINISTRATIVE DETERMINATION WAS ARBITRARY, CAPRICIOUS AND UNREASONABLE BECAUSE THE LEGISLATIVE HISTORY OF THE GOVERNING STATUTE, [N.J.S.A.] 43:16A-15.1, DOES NOT SUPPORT THE PFRS BOARD'S DETERMINATION THAT EMPLOYER LIABILITY FOR AN ENROLLMENT DELINQUENCY IS BASED ON WHETHER THE APPLICATION FOR ENROLLMENT WAS FILED WITHIN 1 YEAR OF THE COMPULSORY DATE OF ENROLLMENT.

POINT IV

THE BOARD OF TRUSTEES OF THE POLICE AND FIREMEN'S RETIREMENT SYSTEM'S FINAL ADMINISTRATIVE DETERMINATION WAS ARBITRARY, CAPRICIOUS AND UNREASONABLE BECAUSE [N.J.A.C.] 17:1-3.1 IS INCONSISTENT WITH THE GOVERNING STATUTE, [N.J.S.A.] 43:16A-15.1, AND THE BOARD RELIED ON [N.J.A.C.] 17:1-3.1 IN REJECTING THE NFU['S] REQUEST TO ASSESS THE CITY OF NEWARK A DELINQUENCY FOR ITS UNTIMELY ENROLLMENT OF CERTAIN MEMBERS OF THE NFU.

POINT V

ASSUMING, ARGUENDO, THAT THE BOARD'S INTERPRETATION OF THE STATUTE IS CORRECT, AND THE DELINQUENCY IS DETERMINED BASED ON 12 MONTHS BETWEEN DATE OF COMPULSORY ENROLLMENT AND DATE APPLICATION IS RECEIVED, THE DIVISION OF PENSIONS AND BENEFITS MUST ASSESS THE CITY OF NEWARK FOR THE DELINQUENT ENROLLMENT OF THREE OR MORE FIREFIGHTERS IN THE PFRS.

To determine whether the Board correctly decided that Newark was not obligated to make delinquent enrollment penalties for forty-nine firefighters' PFRS enrollment contributions because the city did not timely enroll them in PFRS, requires us to consider the Board's interpretation of N.J.A.C. 17:1-3.1(b) and N.J.S.A. 43:16A-15.1. In doing so, we must be guided by deferential

principles of limited appellate review. "'An administrative agency's final quasi-judicial decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)).

"Generally, courts afford substantial deference to an agency's interpretation of a statute that the agency is charged with enforcing." Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 196 (2007). "Such deference has been specifically extended to state agencies that administer pension statutes[,]" because "'a state agency brings experience and specialized knowledge to its task of administering and regulating a legislative enactment within its field of expertise.'" Piatt v. Police & Firemen's Ret. Sys., 443 N.J. Super. 80, 99 (App. Div. 2015) (quoting In re Election Law Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010)). We likewise defer to an agency's interpretation of regulations within its implementing and enforcing responsibility. See Utley v. Bd. of Review, Dep't of Labor, 194 N.J. 534, 551 (2008) (citations omitted). Nonetheless, we are not bound by an agency's interpretation of law. Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001).

The primary purpose of "statutory interpretation is to determine and 'effectuate the Legislature's intent.'" State v. Rivastineo, 447 N.J. Super. 526, 529 (App. Div. 2016) (quoting State v. Shelley, 205 N.J. 320, 323 (2011)). We initially consider "the plain 'language of the statute, giving the terms used therein their ordinary and accepted meaning.'" Ibid. "We will not presume that the Legislature intended a result different from what is indicated by the plain language or add a qualification to a statute that the Legislature chose to omit." Tumpson v. Farina, 218 N.J. 450, 467-68 (2014) (citing DiProspero v. Penn, 183 N.J. 477, 493 (2005)). When we do not conclude that the "plain reading of the statutory language is ambiguous, . . . or leads to an absurd result," we refrain from looking at "extrinsic evidence, such as legislative history, committee reports, and contemporaneous construction in search of the Legislature's intent." Id. at 468 (citing DiProspero, 183 N.J. at 492-93).

A.

Applying these principles, we affirm substantially for the reasons stated by the Board in its Final Decision. The Board reasoned that:

> [N.J.S.A.] 43:16A-15.1(a) refers to an individual "whose application for enrollment in the retirement system or whose application for transfer from one employer to another within the system was filed beyond the effective date for his compulsory enrollment in the system or his transfer within the system." [N.J.S.A.]

11

43:16A-15.1(b) measures the timeframe for delinquent enrollment as one year "from the time that contributions would have been required from such person." [N.J.A.C.] 17:1-3.1(b) measures delinquent enrollment as one year from "the employee's date of enrollment or transfer" which is the same language as used in [N.J.S.A.] 43:16A-15.1(a). Therefore, the statute and regulation use consistent language. The statute and the regulation both provide the employer with the same one year to file an enrollment application to the Division. Neither the statute nor the regulation requires pension deductions to be taken within the year. The Board noted that there were delays in Newark's responses to the Division's request for additional information during the enrollment process. However, these delays were after the completed application was timely filed by Newark. The information requested by the Division is not part of the application itself, therefore, the Board determined that the regulation is valid[,] and the Division's application of the regulation is consistent with the statute.

[(emphasis added).]

We discern no basis for disturbing the Board's decision and affirm substantially for the reasons stated in the Final Decision. We add the following brief remarks.

The Board's decision is supported by a plain reading of the statute and regulation. Contrary to NFU's contention, neither the statute nor the regulation requires pension deductions to be taken within the year that the enrollment application must be filed. The statute merely provides, "[i]f more than [one] year has elapsed from the time that contributions would have been required . . .

12

[,]" the employer must pay "[one-half] of the employee's cost[.]"  N.J.S.A. 43:16A-15.1(b).  Once the enrollment process is complete, the employee and employer will receive a notice showing the date that pension deductions will begin, the rate of contribution, and any back deductions due.

There is no dispute that enrollment contributions are owed starting on the compulsory date of enrollment.  The issue is determining when the clock starts for the tolling of delinquent contributions.  The one-year period referred to in the statute determines the time that must elapse after pension contributions are due before the Division may assess an enrollment penalty on the employer.  It has nothing to do with the time period required to file the enrollment application. On the other hand, the regulation limits the time period to one year from the compulsory enrollment date for the employer to file the enrollment application. Simply put, the regulation is aligned with the legislative intent and is meant to keep employers accountable.  Furthermore, we agree with the Board's logic that it makes sense for enrollment contributions to begin only when a member is enrolled in PFRS because there are additional requirements such as training and submitting proper medical certifications, other than the filing of the application that needs to be fulfilled before an employee may be enrolled in PFRS.

B.

Having determined the Board's interpretation of N.J.A.C. 17:1-3.1 and N.J.S.A. 43:16A-15.1 is correct, we turn to NFU's argument that the Board arbitrarily failed to impose a delinquent enrollment penalty for firefighters Benjamin, Dugan and Espaillat for submitting their enrollment applications more than a year after their compulsory enrollment date.

NFU maintains that despite the Division's three written requests to Newark, advising that the enrollment applications for Benjamin and Dugan could not be processed due to documents not provided by the city, their completed applications were not received until December 11, 2014, beyond the twelve-month period from the compulsory enrollment date of December 1, 2013. Therefore, NFU contends the Board's failure to assess the city for Benjamin and Dugan's delinquent filings was arbitrary and should be reversed. We disagree.

Based upon our review of the record, we are satisfied the credible evidence supports the Board's decision that no enrollment penalty should be imposed for Benjamin and Dugan because it received their completed enrollment applications on May 28, 2014, five months after their December 1, 2013 compulsory enrollment date. The Board stresses that the delays occurred after Newark timely filed the enrollment applications because of a holdup in

receiving their medical certifications and the Division's request to Newark for additional information. Given our deference to the Board's decision-making, we discern no reason to disturb its ruling not to assess an enrollment penalty on Newark for Benjamin and Dugan's enrollment applications.

With respect to Espaillat, we reach a different result and reverse the Board's ruling that Newark should not have been penalized for tardy submission of his enrollment application. NFU contends that a penalty was warranted as Espaillat's enrollment application was received on May 10, 2015, more than one year from his compulsory enrollment date of December 1, 2013. The Division disagrees, contending his application was filed on May 28, 2014, within the one-year deadline of December 1, 2013.

Based on the record before us, NFU is correct. Espaillat's enrollment application shows a date stamp of May 10, 2015, not May 28, 2014. The Board therefore erred in not assessing an enrollment penalty under N.J.S.A. 43:16A-15.1 on Newark for its submission of Espaillat's application over one year after his compulsory enrollment date. Accordingly, Newark must pay an enrollment penalty for its untimely submission of Espaillat's application.

Affirmed in part, and reversed in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15                                                                  A-1342-17T3