**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2361-16T4

IN THE MATTER OF
CITY OF PERTH AMBOY,

     Respondent-Respondent,

and

PERTH AMBOY POLICE
BENEVOLENT ASSOCIATION
LOCAL 13,

     Charging Party-Appellant.

_____

Argued October 4, 2018 – Decided July 17, 2019

Before Judges O'Connor, Whipple and DeAlmeida.

On appeal from the New Jersey Public Employment Relations Commission, P.E.R.C. No. 2017-30.

Stephen B. Hunter argued the cause for appellant (Detzky, Hunter & DeFillippo, LLC, attorneys; Stephen B. Hunter, of counsel and on the brief).

Michael S. Williams argued the cause for respondent City of Perth Amboy (Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, LLP, attorneys; Douglas V.

Sanchez, of counsel and on the brief; Michael S. Williams, on the brief).

Frank C. Kanther, Deputy General Counsel, argued the cause for respondent New Jersey Public Employment Relations Commission (Christine Lucarelli-Carneiro, General Counsel, attorney; Frank C. Kanther, on the statement in lieu of brief).

PER CURIAM

Charging Party Perth Amboy Police Benevolent Association, Local 13 (PBA) appeals from the December 22, 2016 final agency decision of the Public Employment Relations Commission (PERC) dismissing its claim that respondent City of Perth Amboy committed an unfair practice under the New Jersey Employer-Employee Relations Act (Act), N.J.S.A. 34:13A-1 to -43, when it unilaterally changed its method of calculating pay for police officers on military leave. We affirm.

I.

PBA is the majority representative of police officers employed by Perth Amboy. Prior to May 2011, the city's Police Department had no formal written policy regarding military leave and the matter was not addressed in the collective negotiations agreement (CNA) in place at that time. Effective May 12, 2011, the department issued General Order No. 11-029 (General Order), which, among other things, detailed the types of military leave for which officers

A-2361-16T4

would and would not receive pay. The General Order also set forth the method for calculating paid military leave as follows: "NOTE: For clarification of [m]ilitary [l]eave [t]ime, all members will be converted to an [eight-]hour day[.] [F]or example, if working a [ten-]hour day the member will account for the military leave as a [five-]day, [eight-]hour work schedule."

On July 5, 2011, PBA filed an unfair practice charge against Perth Amboy pursuant to the Act, alleging that as a result of the unilateral adoption of the General Order, officers who used to be paid for all military leave are forced to use vacation and compensatory time or lose pay when absent for military training for which paid leave was no longer available.

In 2012, the parties settled PBA's unfair practice charge through entry of a memorandum of agreement (MOA). PBA agreed to dismiss the charge with prejudice and, as stated in the MOA, "to abide by and not to challenge the Police Department's written policy on [m]ilitary [l]eave as set forth in" the General Order. In addition, the MOA grandfathered five officers, entitling them to paid leave for five military weekend drills per year. As for all other officers, the MOA provided their paid military leave would be determined pursuant to the General Order. The MOA also provided either party could raise the issue of

military leave during the next round of contract negotiations, and that it "encompasses all terms agreed to by the parties with respect to these matters."

On September 17, 2014, PBA filed the unfair practice charge that is the subject of this appeal. In pertinent part, the charge alleges:

> On or about June 16, 2014, the Chief of Police and the Business Administrator informed two unit members that their active military duty days will be based on a five and two work schedule which neither member works and for that matter which no unit member works. The five and two schedule represents five days at eight hours a day and two days off. Both unit members worked a four on and four off schedule which represents four days on at ten hours per day and four days off.

> As a result of this unilateral calculation change, both unit member[s'] leaves of absence will be terminated prematurely. Further, both unit members will be required to use more of their vacation, compensatory[,] and personal time, in order to continue to be paid. In the past, these calculations were always based on the actual schedule worked. Further, and perhaps more importantly, the City always reimbursed said employees with no loss of pay beyond the statutory ninety days.

The last sentence of the quoted material refers to N.J.S.A. 38A:4-4, which mandates public employees who are members of an organized militia not suffer a loss of pay or time while on State or federal active duty military leave, but provides that military leaves of absence in excess of ninety days shall be without

pay but without loss of time. N.J.S.A. 38:23-1 establishes a similar mandate for public employees who are in the United States Reserves or the National Guard and take military leave, but limits paid leave to thirty days.

PBA argued that Perth Amboy violated N.J.S.A. 34:13A-5.4(a)(1), (2), and (5) because: (a) the two statutory provisions noted above preempt the MOA and General Order and require that officers' military leave pay be calculated according to their actual work schedules; and (b) if the statutory provisions do not preempt this issue, Perth Amboy violated the Act by not negotiating with PBA the terms of the General Order before its issuance and implementation.

Perth Amboy contested the unfair practice charge, arguing that the statutes do not preempt the issue because they do not specify how pay is to be calculated for employees on military leave. In addition, it argued PBA waived its right to negotiate the calculation of military leave pay by entering the MOA and a new CNA without negotiating a change in the terms of the General Order.

The parties filed cross-motions for summary judgment before a PERC hearing examiner. Perth Amboy supported its waiver argument with a certification from its business administrator, who represented the city during negotiations for a CNA that took effect in 2014. He certified PBA did not

negotiate a change in the military leave provisions or make any proposals regarding military leave during the negotiation of the 2014 CNA.

PBA replied with a certification from its vice president, who certified that he was present at all settlement discussions leading to the MOA and the only issue in dispute was the use of paid leave time for weekend drills. He certified that the method of calculating pay for military leave was not discussed, and that he had been on military leave both before and after the effective date of the MOA and was paid based on his regular four-day, ten-hour work schedule, not on the eight-hour, five day on, two day off schedule in the General Order. He certified that as a result of the new calculation method, he lost both pay and time during military leave.

The hearing examiner denied PBA's motion for summary judgment and granted summary judgment in favor of Perth Amboy, adopting both of Perth Amboy's arguments. In reaching her decision, the hearing examiner barred, under the parole evidence rule, all statements in the certification submitted by PBA that were contrary to the unambiguous terms of the MOA.

PBA filed exceptions to the hearing examiner's decision. PERC rejected PBA's exceptions and adopted the decision of the hearing examiner.

6

This appeal followed. PBA reiterates its statutory preemption argument and contends that it did not waive its right to negotiate the method for calculating pay for officers on military leave.

II.

PERC is charged with administering the Act and its interpretation of the statute is entitled to substantial deference. N.J. Tpk. Auth. v. AFSCME Council 73, 150 N.J. 331, 352 (1997). Appellate courts "will not upset a State agency's determination in the absence of a showing that it was arbitrary, capricious or unreasonable, or that it lacked fair support in the evidence, or that it violated a legislative policy expressed or implicit in the governing statute." In re Camden Cty. Prosecutor, 394 N.J. Super. 15, 22-23 (App. Div. 2007) (emphasis omitted) (quoting Cty. of Gloucester v. PERC, 107 N.J. Super. 150, 156 (App. Div. 1969)). "Although an agency's 'interpretation of the statute it is charged with administering . . . is entitled to great weight' . . . [appellate courts] will not yield to PERC if its interpretation is 'plainly unreasonable, contrary to the language of the Act, or subversive of the Legislature's intent.'" Id. at 23 (citations omitted).

Terms of a negotiated agreement are unenforceable if they are preempted by legislation. Bethlehem Twp. Bd. of Educ. v. Bethlehem Twp. Educ. Ass'n,

7

91 N.J. 38, 44 (1982). To preempt an agreement, a statute must "fix[] a term and condition of employment 'expressly, specifically and comprehensively.'" Ibid. (quoting Council of N.J. State Coll. Locals v. State Bd. of Higher Educ., 91 N.J. 18, 30 (1982)). The statutory provision must "speak in the imperative and leave nothing to the discretion of the public employer." State v. State Supervisory Emps. Ass'n, 78 N.J. 54, 80 (1978). "[T]he mere existence of legislation relating to a given term or condition of employment does not automatically preclude negotiations." Bethlehem, 91 N.J. at 44.

N.J.S.A. 38A:4-4 provides in pertinent part:

> (a)    A permanent or full-time . . . employee of . . . [a] municipality who is a member of the organized militia shall be entitled, in addition to pay received, if any, as a member of the organized militia, to leave of absence from his or her respective duties without loss of pay or time on all days during which he or she shall be engaged in any period of State or Federal active duty; provided, however, that the leaves of absence for Federal active duty or active duty for training shall not exceed [ninety] work days in the aggregate in any calendar year. Any leave of absence for such duty in excess of [ninety] work days shall be without pay but without loss of time.
>
> (b)    Leave of absence for such military duty shall be in addition to the regular vacation or other accrued leave allowed such . . . employees by . . . law, ordinance, resolution, or regulation.

N.J.S.A. 38:23-1(a) provides:

A permanent or full time . . . employee of . . . [a] municipality, who is a member of the organized reserve of the Army of the United States, United States Naval Reserve, United States Air Force Reserve or United States Marine Corps Reserve, or other organization affiliated therewith, including the National Guard of other states, shall be entitled, in addition to pay received, if any, as a member of a reserve component of the Armed Forces of the United States, to leave of absence from his or her respective duty without loss of pay or time on all work days on which he or she shall be engaged in any period of Federal active duty, provided, however, that such leaves of absence shall not exceed [thirty] work days in any calendar year. Such leave of absence shall be in addition to the regular vacation or other accrued leave allowed such . . . employee. Any leave of absence for such duty in excess of [thirty] days shall be without pay but without loss of time.

PBA argues that these provisions preempt the MOA and General Order because the term "work days" in both statutes refers to the officers' actual ten-hour work day, rather than the eight-hour work day in the General Order. We disagree.

It is well settled that the primary purpose of "statutory interpretation is to determine and 'effectuate the Legislature's intent.'" State v. Rivastineo, 447 N.J. Super. 526, 529 (App. Div. 2016) (quoting State v. Shelley, 205 N.J. 320, 323 (2011)). We start by considering "the plain 'language of the statute, giving the terms used therein their ordinary and accepted meaning.'" Ibid. (quoting

9

<u>Shelley</u>, 205 N.J. at 323). Where "the Legislature's chosen words lead to one clear and unambiguous result, the interpretive process comes to a close, without the need to consider extrinsic aids." <u>Ibid.</u> (quoting <u>Shelley</u>, 205 N.J. at 323). We do "not 'rewrite a plainly-written enactment of the Legislature [or] presume that the Legislature intended something other than that expressed by way of the plain language.'" <u>Id.</u> at 529-530 (alteration in original) (quoting <u>Marino v. Marino</u>, 200 N.J. 315, 329 (2009)).

N.J.S.A. 38A:4-4 and N.J.S.A. 38:23-1 entitle public employees to leave for specified periods without a loss in pay or time for various types of military duty. Neither statute, however, specifies how pay and time for military leave is to be calculated. The statutes, therefore, do not preempt negotiation of the calculation method to be used to fulfill the statutory objectives. There is no express, specific, and comprehensive indication in the statutes that the Legislature intended to exclude the topic from collective bargaining.[1]

---

[1] PBA also relies on a Department of Community Affairs, Division of Local Government Services Bulletin regarding State reimbursement to employers for military leave pay. The Bulletin provides "[t]he routine work schedule of the individual is the basis for calculating the mandate obligation for State reimbursement. For example, law enforcement . . . [who] do not work [five] days on/[two] days off schedules would be calculated on a case-by-case basis, using the individual's normal schedule." The Bulletin does not address how pay is to be calculated for military leave, but the rate at which employers will be

Nor do we agree with PBA's contention that it is entitled to relief because Perth Amboy's issuance of the General Order amounted to a unilateral change of a mandatorily negotiable term of employment in violation of the Act. Pursuant to N.J.S.A. 34:13A-5.4(a)(5), public employers are prohibited from "[r]efusing to negotiate in good faith with a majority representative of employees . . . concerning terms and conditions of employment[.]"  A public employer violates the Act whenever it unilaterally changes mandatorily negotiable terms and conditions of employment.  See Galloway Twp. Bd. of Educ. v. Galloway Twp. Educ. Ass'n, 78 N.J. 25, 49 (1978).

While Perth Amboy may have unilaterally changed a term or condition of employment when it issued the General Order, PBA challenged the General Order and settled its claim in exchange for grandfathering employees with respect to weekend military drills and the right to raise military leave in future contract negotiations.  PBA's challenge to Perth Amboy's initial issuance of the General Order therefore has been settled.

So too has PBA's right to challenge application of the General Order to the employees at issue here.  A public employer does not have to negotiate a

reimbursed.  We note also that a bulletin issued by an executive branch agency cannot preempt a statutory right to negotiate a term or condition of employment.

11

term or condition of employment if a union has waived its right to negotiate. See City of Jersey City v. Jersey City Police Officers Benevolent Ass'n, 154 N.J. 555, 577 (1998). A valid waiver must be "clear and unmistakable." Ibid. (quotations omitted). A union waives its right to negotiate in a "contract [that] explicitly and unmistakably allows the employer to make the changes[.]" Ibid. (quotation omitted). In addition, settlement of civil litigation ranks high in the public policy of our State. Jannarone v. W.T. Co., 65 N.J. Super. 472, 476 (App. Div. 1961). Settlement agreements will be enforced absent a demonstration of fraud or other compelling circumstances based on clear and convincing proof. Nolan v. Lee Ho, 120 N.J. 465, 472 (1990).

The MOA is unambiguous. In addition, the record contains no evidence suggesting that fraud or other circumstances warrant abrogation of the MOA.

Moreover, the MOA indicates that it is fully integrated, containing all terms on which the parties agreed. When a contract is unambiguous, evidence intended to contradict the clear terms of the agreement is inadmissible. See Atl. N. Airlines v. Schwimmer, 12 N.J. 293, 303 (1953) ("Where the parties have made the writing the sole repository of their bargain, there is the integration which precludes evidence of antecedent understandings and negotiations to vary or contradict the writing."). PERC correctly disregarded the certification PBA

submitted for the purpose of showing the parties did not intend to include the pay calculation terms of the General Order in the MOA.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2361-16T4