**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3657-21

EAST ORANGE EDUCATIONAL
SUPPORT PROFESSIONALS'
ASSOCIATION and EAST ORANGE
MAINTENANCE ASSOCIATION,

      Plaintiffs-Respondents/
      Cross-Appellants,

v.

EAST ORANGE BOARD OF
EDUCATION,

      Defendant-Appellant/
      Cross-Respondent.

_____

      Argued January 16, 2024 – Decided February 25, 2025

      Before Judges Gilson and DeAlmeida.

      On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. C-000053-22.

      Ramon E. Rivera argued the cause for appellant/cross-respondent (Antonelli Kantor Rivera, PC, attorneys;

Ramon E. Rivera, of counsel; Lawrence M. Teijido and Madelaine P. Hicks, on the briefs).

Sanford R. Oxfeld argued the cause for respondents/cross-appellants (Oxfeld Cohen, PC, attorneys; Sanford R. Oxfeld and William P. Hannan, of counsel and on the brief).

The opinion of the court was delivered by

DeALMEIDA, J.A.D.

Defendant East Orange Board of Education (Board) appeals from the June 16, 2022 order of the Chancery Division to the extent it confirms an arbitration award of extra compensation to the Board's custodial employees who reported to work when school facilities were closed to students during the COVID-19 state of emergency. The award was based on a contractual provision entitling custodial employees to extra compensation when they work on days when "schools are closed for an emergency."

We conclude the arbitration award of extra compensation to the Board's custodial employees conflicts with the public policy embodied in N.J.S.A. 18A:7F-9(e)(1). That statute, enacted at the start of the COVID-19 state of emergency, provides that when school facilities are closed for an extended period due to a state of emergency, school employees shall be compensated "as if the school facilities remained open for any purpose . . . ." As a result, we

reverse the June 16, 2022 order to the extent it confirms the arbitration award of extra compensation to custodial employees and remand for entry of an order vacating that aspect of the arbitration award.

Plaintiffs East Orange Educational Support Professionals' Association (SPA) and East Orange Maintenance Association (MA) (collectively the Unions) cross-appeal from the June 16, 2022 order to the extent it confirms the arbitration award denying extra compensation to the Board's maintenance employees who reported to work during the COVID-19 state of emergency. Because the Unions' complaint asked the trial court to confirm the arbitration award in its entirety, the trial court declined to hear the Unions' challenge to the portion of the arbitration award denying extra compensation to the Board's maintenance employees. We agree with the trial court's conclusion that the Unions did not raise a challenge to the arbitration award concerning maintenance employees in the trial court. We therefore dismiss the cross-appeal.

I.

On March 9, 2020, the Governor declared a state of emergency concerning the COVID-19 pandemic. Exec. Order No. 103 (Mar. 9, 2020). The COVID-19 state of emergency ended on July 4, 2021. Exec. Order No. 244 (June 4, 2021).

During the COVID-19 state of emergency, East Orange school facilities were closed to students, with the exception of September and October 2020, and two weeks in 2021. While school facilities were closed, students received virtual instruction. However, other activities, including providing lunches to students, continued to take place at school facilities. In addition, some Board personnel, such as administrators and office staff, were periodically present at school facilities. The Board's custodial, security, and maintenance employees regularly reported in person to school facilities to work.

On April 14, 2020, the Governor enacted L. 2020, c. 27, parts of which were later codified as amendments to N.J.S.A. 18A:7F-9. The statute provides in relevant part:

> Nothing in subsection b., c., or d. of this section [permitting virtual instruction of students] shall be construed to limit, supersede or preempt the rights, privileges, compensation, remedies, and procedures afforded to public school employees or a collective bargaining unit under federal or State law or any provision of a collective bargaining agreement entered into by a school district. In the event of the closure of the schools of a school district due to a declared state of emergency . . . for a period longer than three consecutive school days, public school employees covered by a collective negotiations agreement shall be entitled to compensation, benefits, and emoluments as provided in the collective negotiations agreement as if the school facilities remained open for any purpose and for any time lost as a result of school closures or use of

4

virtual or remote instruction, except that additional compensation, benefits, and emoluments may be negotiated for additional work performed.

[N.J.S.A. 18A:7F-9(e)(1).]

SPA is the collective bargaining representative of the Board's custodial employees. MA is the collective bargaining representative of the Board's security and maintenance employees. At the times relevant to this appeal, the three categories of employees were covered by separate collective bargaining agreements (CBA) with the Board.

Article XXIII, Subsection B of the CBA for custodial employees provided in relevant part:

Emergency School Closings

1. Custodians who do not work on any day when schools are closed for an emergency shall not be paid and shall be docked an amount equal to one (1) day of pay.

2. Custodians who do work on any day when schools are closed for an emergency shall be paid 1 1/2 times their salary in addition to their regular day of pay.

Article XIII, "Emergency School Closing," of the CBA for security employees provided:

The Board agrees to compensate all security personnel for their regular day[']s pay whenever schools are closed for reasons of emergency. A regular day is

defined as the number of hours contained in a normal work day for the security staff member involved. All members of the Union required to work during a State of Emergency, as declared by the Governor, shall be compensated time and one-half.

Article VII, Section 9 of the CBA for maintenance employees provided in relevant part:

Emergency School Closings

. . . .

c.      Maintenance personnel who are on the roster and who work on any day when schools are closed for an emergency shall be paid 1.5 times their salary, in addition to their regular pay for the day.

. . . .

k.      The above provisions shall not apply on any day when the Governor of the State of New Jersey, or the Mayor of East Orange, or the Mayor of the Town in which the employee resides declares a "State of Emergency."

From March 13, 2020, to July 13, 2020, the Board paid its custodial, security, and maintenance employees one-and-one-half times their regular pay, in addition to their regular pay, for the time they worked while school facilities

were closed to students. The Board did not change this practice when N.J.S.A. 18A:7F-9(e)(1) was enacted on April 14, 2020.[1]

After the Board stopped paying custodial, security, and maintenance employees more than their regular pay for working while school facilities were closed to students, SPA and MA filed three grievances, one for each category of employees, with the Public Employees Relations Commission. The Commission combined the grievances into one arbitration proceeding. The issue presented to the arbitrator was: "Did the [Board] violate the CBAs when, on July 13, 2020, it ceased paying additional pay to employees covered by this grievance? If so, what should be the remedy?"

On January 16, 2022, the arbitrator issued a written opinion and award. The arbitrator identified the principal issue as whether the Board's schools were closed within the meaning of the CBAs during the COVID-19 state of emergency. The Unions argued schools were closed because students were not permitted to enter school facilities for instruction. The Board argued schools

---

[1] It is not clear why the Board paid security employees one-and-one-half times their regular pay, in addition to their regular pay, given that the CBA for security employees provides they will be compensated at a rate of time and one-half for their work during a state of emergency. The Unions contend the Board's payment of security employees at the higher rate during emergency school closures was a longstanding practice, despite the clear language in the CBA.

7

were not closed because instruction took place virtually, some employees were present at school facilities, and the Board provided students lunch at school facilities. In addition, the Board argued the CBAs did not contemplate extra compensation for states of emergency that closed school facilities for extended periods of time.

The arbitrator interpreted the CBAs to mean schools were closed when school facilities were not open for the in-person instruction of students. In addition, the arbitrator considered the April 2020 amendment to N.J.S.A. 18A:7F-9. He determined N.J.S.A. 18A:7F-9(e)(1) is "not entirely clear" but "its purpose would appear to be to protect bargaining unit employees from losses – not additional pay – sustained due to closures longer than three days." He continued, "[e]ven less clear is the legislature's authority to invalidate my jurisdiction which springs from the parties' agreement to interpret and render an award based solely on that agreement."

In Part I of his decision, the arbitrator determined the Board violated the custodial employees' CBA when it stopped paying them extra compensation for the time they worked while schools were closed to students during the COVID-19 state of emergency.

In Part II of his decision, the arbitrator determined the Board violated the security employees' CBA when it stopped paying them extra compensation for the time they worked while schools were closed to students during the COVID-19 state of emergency. However, he decided security employees were entitled to compensation at a rate of time-and-a-half under their CBA. The arbitrator rejected MA's argument security employees were entitled to be paid at the rate of one-and-a-half times their regular pay, in addition to their regular pay, the Board erroneously paid them at the start of the COVID-19 state of emergency and during past emergencies. The arbitrator declined to adopt a rate of compensation at odds with the plain language of the CBA based on the Board's past practices.

In Part III of his decision, the arbitrator determined the maintenance employees' CBA unequivocally states they are not entitled to extra compensation for work performed when the Governor has declared a state of emergency. The arbitrator determined it is undisputed the Governor declared a COVID-19 state of emergency, which remained in place from March 9, 2020, to July 4, 2021, precluding the maintenance employees' claim for extra compensation.

A-3657-21

The arbitrator entered an award: (1) directing the Board to pay its custodial employees one-and-a-half times their pay, in addition to their regular pay, for time working while school facilities were closed to students during the COVID-19 state of emergency; (2) directing the Board to pay its security employees one-and-a-half times their pay for time working while school facilities were closed to students during the COVID-19 state of emergency and denying the security employees' grievance for a higher amount of extra compensation; and (3) denying the maintenance employees' grievance for extra compensation.

The Unions subsequently filed a complaint and order to show cause in the Chancery Division seeking to confirm the arbitration award. The Unions acknowledged in their complaint that the arbitrator denied, in part, the security employees' grievance, and denied the maintenance employees' grievance. The complaint, however, did not challenge Parts II and III of the arbitration award. To the contrary, the complaint states the security employees "are entitled to an additional 1/2 times their regular rate of pay for the period March 9, 2020, to July 4, 2020"[2] and does not allege maintenance employees are entitled to extra

---

[2] The complaint appears to contain a typographical error, as the grievance sought a finding they are entitled to extra compensation for the period March 9, 2020, to July 4, 2021.

compensation. In addition, the complaint alleges "[t]here exist no grounds to vacate the [arbitration] award."

In a footnote of a cover letter accompanying the order to show cause, MA purported to reserve the right to seek an order vacating Part III of the arbitration award. The footnote stated:

> In making the admission that the custodial employees were denied their claim by the arbitrator, [MA] reserves the right to move for vacation of any part of the arbitrator's award in which it was not fully successful, but only in the event the Board opposes this application and seeks to have any part of the award . . . vacated.

The Board subsequently filed an answer denying the relief sought by the Unions was warranted. Although the Board did not file a counterclaim, in its "wherefore" clause it requests the court vacate the arbitration award in its entirety. However, in the brief it filed in response to the order to show cause, the Board argued the arbitration award should not be vacated in its entirety, but confirmed as to Parts II and III. Because the Unions also sought to confirm those Parts of the arbitration award in their complaint, the Board limited the arguments in its brief to vacating Part I of the award.

Three weeks later, the Unions submitted a reply brief that, for the first time, sought to vacate Part III of the award. In their letter, the Unions stated:

To put it more succinctly, [p]laintiffs submit this brief seeking the following relief:

• Confirm [P]art [I] of the Award sustaining the grievance in regard to custodial staff;

• Confirm Part [II] of the Award sustaining the grievance, in part, in regard to security staff; and

• Vacate Part [III] of the Award denying the grievance in regard to maintenance staff and granting the relief sought in the grievance.

On June 16, 2022, the court heard oral argument. At the start of the hearing, counsel for the Unions stated:

Judge, procedurally, it's our position, our primary position that the award of the arbitrator is unimpeachable. That it should be confirmed in every respect. And I say that knowing that we've lost in full one-third of the award. But I don't think that that is subject to being challenged.

What I did do and the submission I made initially was if the Board is going to take the position that any part of this award can be vacated than we're going to say that the third part of the [award], which we did lose, and which I do believe quite honestly whether I'm in favor of it or not should be confirmed. But if the [c]ourt is going to get behind the face of the award [then] I want to be heard to vacate only that part of the award dealing with the [MA], which is the only part of the award that we lost in full.

A-3657-21

The Board's counsel objected to the Unions "attempting to . . . chang[e] . . . position midstream" by seeking to vacate Part III of the arbitration award in its reply brief.

The trial court agreed with the Board. Noting that it would not "address a backup position[,]" the court stated "what was to be addressed today is what is in the verified complaint. The verified complaint seeks affirmance of the entire award. That's what you responded to and that's what I'll hear you on."

On June 16, 2022, the trial court issued an oral opinion confirming the arbitration award. The court found the decision to be well reasoned and its outcome reasonably debatable. The court did not discuss N.J.S.A. 18A:7F-9(e)(1) in detail, finding only that the award "is not contrary to any law, regulation[,] precedent" or public policy.

A June 16, 2022 order: (1) confirms the arbitration award in its entirety; (2) directs the Board to pay custodial employees one-and-a-half times their regular pay, in addition to the regular pay, for time they worked while school facilities were closed to children during the COVID-19 state of emergency; and (3) directs the Board to pay security employees one-and-a-half times their regular pay for time they worked while school facilities were closed to children during the COVID-19 state of emergency.

13

The Board thereafter filed an appeal, arguing the trial court erred when it confirmed the arbitration award. The Board argues the arbitration award is contrary to N.J.S.A. 18A:7F-9(e)(1), which unequivocally requires the Board to compensate its employees as if school facilities had been open during the COVID-19 state of emergency. The Board argues the statute embodies the public policy of the State that school employees and school districts maintain steady and predictable compensation during extended school facility closures as if the school facilities had remained open for any purpose.

The Unions filed a cross-appeal, arguing the trial court erred when it did not vacate Part III of the arbitration award. The Unions contend the arbitrator exceeded his authority by denying the maintenance employees' grievance based on an interpretation of their CBA no party proffered at the arbitration. The Unions argued that during the arbitration hearing they had on standby witnesses who negotiated the maintenance employees' CBA and would have called those witnesses had the Union relied on subsection (k) of Article VII, Section 9 of the agreement. According to the Unions, those witnesses were prepared to testify that subsection (k) was intended by the parties to the CBA to apply to circumstances not present during the COVID-19 state of emergency.

The Board argues the Unions are barred from pursuing their cross-appeal, but if permitted to do so, we should entertain the Board's challenge to the trial court's order confirming Part II of the award.

II.

"New Jersey jurisprudence favors 'the use of arbitration to resolve labor-management disputes.'" Linden Bd. of Educ. v. Linden Educ. Ass'n, 202 N.J. 268, 275-76 (2010) (quoting N.J. Tpk. Auth. v. Local 196, I.F.P.T.E., 190 N.J. 283, 291 (2007)). "Arbitration is intended to provide 'a speedy and inexpensive' means to settle disputes." Id. at 276 (citing Bd. of Educ. of Alpha v. Alpha Educ. Ass'n, 190 N.J. 34, 42 (2006)).

"Judicial review of an arbitration award is very limited, and 'the arbitrator's decision is not to be cast aside lightly.'" Ibid. (quoting Alpha Educ. Ass'n, 190 N.J. at 42). We review the trial court's decision with respect to the confirmation of an arbitration decision de novo. Minkowitz v. Israeli, 433 N.J. Super. 111, 136 (App. Div. 2013) (quoting Manger v. Manger, 417 N.J. Super. 370, 376 (App. Div. 2010)).

"In the public sector, an arbitrator's award will be confirmed 'so long as the award is reasonably debatable.'" Linden Bd. of Educ., 202 N.J. at 276 (quoting Middletown Twp. PBA Local 124 v. Twp. of Middletown, 193 N.J. 1,

15

11 (2007)). An award is reasonably debatable if it is "justifiable" and "fully supportable in the record." Policemen's Benevolent Ass'n v. City of Trenton, 205 N.J. 422, 431 (2011) (quoting Kearny PBA Local # 21 v. Town of Kearny, 81 N.J. 208, 223-24 (1979)). Under the reasonably debatable standard, "a reviewing court may not substitute its own judgment for that of the arbitrator, regardless of the court's view of the correctness of the arbitrator's interpretation." N.J. Transit Bus Operations, Inc. v. Amalgamated Transit Union, 187 N.J. 546, 554 (2006).

Under the New Jersey Arbitration Act, N.J.S.A. 2A:24-1 to -11, an arbitration award under a collective bargaining agreement shall be vacated:

> a. Where the award was procured by corruption, fraud, or other undue means;
>
> b. Where there was either evident partiality or corruption in the arbitrators, or any thereof;
>
> c. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause being shown therefor, or in refusing to hear evidence, pertinent and material to the controversy, or of any other misbehaviors prejudicial to the rights of any party;
>
> d. Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.
>
> [N.J.S.A. 2A:24-8(a) to (d).]

16

Whether or not the arbitrator exceeded their authority "entails a two-part inquiry: (1) whether the agreement authorized the award, and (2) whether the arbitrator's action is consistent with applicable law." Borough of E. Rutherford v. E. Rutherford PBA Local 275, 213 N.J. 190, 212 (2013). A court "may vacate an award if it is contrary to existing law or public policy." Middletown Twp. PBA Local 124, 193 N.J. at 11 (quoting N.J. Tpk. Auth., 190 N.J. at 294).

"For purposes of judicial review of labor arbitration awards, public policy sufficient to vacate an award must be embodied in legislative enactments, administrative regulations, or legal precedents . . . ." Ibid. (quoting N.J. Tpk. Auth., 190 N.J. at 295). An arbitration award may not be vacated as contrary to public policy "based on amorphous considerations of the common weal." Ibid.

The Board argues the June 16, 2022 order confirming the award of extra compensation to custodial employees violates public policy as embodied in N.J.S.A. 18A:7F-9(e)(1). We agree.

It is well settled that the primary purpose of "statutory interpretation is to determine and 'effectuate the Legislature's intent.'" State v. Rivastineo, 447 N.J. Super. 526, 529 (App. Div. 2016) (quoting State v. Shelley, 205 N.J. 320, 323 (2011)). We start by considering "the plain 'language of the statute, giving the terms used therein their ordinary and accepted meaning.'" Ibid. (quoting

17

Shelley, 205 N.J. at 323).  Where "the Legislature's chosen words lead to one clear and unambiguous result, the interpretive process comes to a close, without the need to consider extrinsic aids."  Ibid. (quoting Shelley, 205 N.J. at 323). We do "not 'rewrite a plainly-written enactment of the Legislature [or] presume that the Legislature intended something other than that expressed by way of the plain language.'"  Id. at 529-30 (alteration in original) (quoting Marino v. Marino, 200 N.J. 315, 329 (2009)).  However, "[a]n enactment that is part of a larger statutory framework should not be read in isolation, but in relation to other constituent parts so that a sensible meaning may be given to the whole of the legislative scheme."  Vitale v. Schering-Plough Corp., 447 N.J. Super. 98, 115 (App. Div. 2016) (quoting Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558, 572 (2012)).

N.J.S.A. 18A:7F-9(e)(1) is unequivocal:

> In the event of the closure of the schools of a school district due to a declared state of emergency . . . for a period longer than three consecutive school days, public school employees covered by a collective negotiations agreement shall be entitled to compensation, benefits, and emoluments as provided in the collective negotiations agreement as if the school facilities remained open for any purpose . . . .

Where, as was the case with the COVID-19 state of emergency, school facilities are closed for more than three consecutive school days, school

18

employees are to be compensated pursuant to the terms of their CBA "as if the school facilities remained open for any purpose." The statute requires the Board's custodial employees to be compensated as if the Board's school facilities had been open from March 9, 2020, to July 4, 2021.

The purposes of the statute are evident. Through enactment of 18A:7F-9(e)(1), the Legislature introduced financial certainty and stability in an otherwise fluid situation. The statute was enacted shortly after the start of the COVID-19 state of emergency. It is common knowledge the COVID-19 pandemic's impact on the operation of public schools was dramatic. Access to school facilities for instruction was extremely limited. The few occasions when school facilities reopened proved short lived. N.J.S.A. 18A:7F-9(e)(1) both ensured school employees would be compensated as if school facilities remained open, regardless of the vagaries of the pandemic, and limited the financial exposure of school districts for extra compensation arising from school facility closures, which prior to the COVID-19 state of emergency, would not have reasonably been expected to endure for over a year.

We are not persuaded by the Unions' argument the statute is intended only to prevent employee losses associated with a state of emergency, and not to prevent employees from receiving extra compensation during a state of

emergency as provided in a CBA. Nothing in the plain language of the statute supports this interpretation of the law. In addition, N.J.S.A. 18A:7F-9(e)(1) permits school employees to receive "additional compensation, benefits, and emoluments to be negotiated for additional work performed" during extended school facility closures. The Board's custodial employees do not argue they performed additional work beyond their regular assignments during the COVID-19 state of emergency. They sought to be paid time-and-a-half, in addition to their regular pay, for performing their regular duties for the duration of the year-and-a-half-long COVID-19 state of emergency.

Nor do we agree with the Unions' argument that N.J.S.A. 18A:7F-9(e)(1)'s protection of the "rights, privileges, compensation, remedies, and procedures afforded to public school employees or a collective bargaining unit under . . . any provision of a collective bargaining agreement entered into by a school district" supports Part I of the arbitration award. The custodial employees' rights under their CBA are protected by N.J.S.A. 18A:7F-9(e)(1). Under the statute, the custodial employees have a right to be compensated pursuant to the terms of their CBA "as if the school facilities remained open for any purpose" during the COVID-19 state of emergency.

Part I of the arbitration award is directly contrary to N.J.S.A. 18A:7F-9(e)(1) and its embodiment of public policy. The two cannot be harmonized. The arbitrator's interpretation of the statute as permitting custodial employees to receive extra compensation because the school facilities were closed to students is not reasonably debatable. "[A]rbitrators cannot be permitted to authorize litigants to violate either the law or those public-policy principles that government has established by statute, regulation or otherwise for the protection of the public." Weiss v. Carpenter, Bennett & Morrissey, 143 N.J. 420, 443 (1996).

We therefore reverse the June 16, 2022 order to the extent it confirms Part I of the arbitration award. We remand to the trial court for entry of an order vacating Part I of the arbitration award.

The Board seeks to reverse the June 16, 2022 order to the extent it confirmed Part II of the arbitration award only if the Unions are permitted to challenge the trial court's confirmation of Part III of the award in their cross-appeal. We turn, therefore, to the cross-appeal.

We agree with the trial court's conclusion the Unions' Chancery Division complaint sought to confirm the arbitration award in its entirety. If the Unions believed the arbitrator erred in Part III of his award by considering an

21

interpretation of the maintenance employees' CBA not offered by either party, they were free to include in their complaint a demand that Part III of the award be vacated. They did not do so. A footnote in a cover letter accompanying an order to show cause is not an appropriate method to "reserve" the right to file a claim not previously included in a complaint. Nor is a reply brief filed after the opposing party had completed its briefing the appropriate avenue to raise for the first time a substantive claim for relief not included in a complaint. We see no error in the trial court's decision not to consider the Unions' challenge to Part III of the arbitration award.

We note the record belies the Unions' argument the Board did not raise subsection (k) of Article VII, Section 9 of the maintenance employees' CBA before the arbitrator. The Board's post-hearing brief filed with the arbitrator quotes subsection (k) and argues that it "clearly demonstrates" the maintenance employees are not entitled to extra compensation when the Governor has declared a state of emergency. The Unions made the strategic decision not to call their witnesses with respect to subsection (k) and did not request a reopening of the hearing after receiving the Board's post-hearing brief.

We are also doubtful the Unions could have convinced the arbitrator or the trial court to award extra compensation to the Board's maintenance

22

employees in light of the unequivocal language of subsection (k), regardless of what the drafters of the agreement may have intended. When a contract is unambiguous, evidence intended to contradict the clear terms of the agreement is inadmissible. See Atl. N. Airlines, Inc. v. Schwimmer, 12 N.J. 293, 303 (1953) ("Where the parties have made the writing the sole repository of their bargain, there is the integration which precludes evidence of antecedent understandings and negotiations to vary or contradict the writing."). Because the Unions did not perfect a challenge to Part III of the arbitrator's award, we dismiss the cross-appeal.

Because we conclude the trial court did not err when it declined to consider the Unions' challenge to Part III of the arbitration award, the Board does not seek review of the trial court's confirmation of Part II of the award.

Reversed in part and remanded for further proceedings consistent with this opinion. The cross-appeal is dismissed. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

23