NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2785-23

ALLEN J. SATZ,

       Plaintiff-Respondent,

v.

KESHET STARR,
ORGANIZATION FOR THE
RESOLUTION OF AGUNOT,
THE JEWISH LINK, NEAL
TURK, and BEIS MEDRASH
OF BERGENFIELD,

       Defendants-Appellants.

_____

> APPROVED FOR PUBLICATION
>
> May 29, 2025
>
> APPELLATE DIVISION

Argued May 15, 2025 — Decided May 29, 2025

Before Judges Mawla, Natali, and Walcott-Henderson.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-5596-23.

Akiva Shapiro (Gibson, Dunn & Crutcher LLP) of the New York bar, admitted pro hac vice, argued the cause for appellants (Stephanie Silvano (Gibson, Dunn & Crutcher LLP), Akiva Shapiro, Dillon M. Westfall (Gibson, Dunn & Crutcher LLP) of the New York bar, admitted pro hac vice, Brian Yeh (Gibson, Dunn & Crutcher LLP) of the New York bar, admitted pro hac vice, and Apratim Vidyarthi (Gibson, Dunn & Crutcher LLP) of the New York bar, admitted pro hac vice,

attorneys; Stephanie Silvano, Akiva Shapiro, Dillon M. Westfall, Brian Yeh, and Apratim Vidyarthi, on the briefs).

Allen J. Satz, respondent, argued the cause pro se.

The opinion of the court was delivered by

MAWLA, P.J.A.D.

Defendants Keshet Starr, The Jewish Link, Beis Medrash, and Rabbi Neal Turk appeal from an April 4, 2024 order denying their motion to reopen this case to pursue their claim for counsel fees, costs, and expenses under the Uniform Public Expression Protection Act (UPEPA), N.J.S.A. 2A:53A-49, after plaintiff Allen J. Satz voluntarily dismissed his complaint against them. We reverse and remand for the reasons expressed in this opinion.

On October 17, 2023, plaintiff sued defendants after they circulated a flyer advocating he give his wife a religious divorce. Plaintiff alleged the flyer contained an unflattering photograph of him and called for a protest outside of his parents' home. The complaint sought a judgment for: removal of the image "from everywhere"; termination of the protests and dissemination of the flyer; emotional distress; uninfringed seclusion; and damages of $30 million.

Plaintiff served the complaint on The Jewish Link on November 2, 2023, and on Rabbi Turk and Beis Medrash on November 10, 2023. On November 30, 2023, defense counsel emailed plaintiff to discuss accepting service of process

for the remaining defendant and to establish a uniform briefing schedule for all defendants on November 30, 2023. The parties negotiated by email until December 5, 2023, when defense counsel sent a follow-up email to plaintiff, indicating he had not responded to their request. Later that day, plaintiff replied, "I do not have to agree to any briefing schedule" and stated the matter was "a very simpl[e] question of whether [defendants] had the right to use one picture." Plaintiff stated he would accept defendants' proposed briefing schedule pursuant to the following conditions:

1. The source of the photo is revealed. Who took it? I know it was taken over Zoom. Was it a court Zoom session? If not, who was the host of the Zoom session[,] as they are also liable as per Zoom.

2. A signed[,] sworn affidavit by all parties listing everywhere this picture has been sent, hung up, displayed, etc.

3. Finally, the removal of this picture from everywhere . . . it can be viewed by anyone. This shall be done in [seven] days. After [seven] days, if it is found anywhere on-line or any other place, there will be a $1,000 fine per day[,] as this picture went worldwide.

Defense counsel rejected these demands and informed plaintiff defendants would be seeking an extension from the court.

A-2785-23

The following day, defendants filed a motion to extend time to answer the complaint. Plaintiff opposed the motion and cross-moved for entry of default judgment.

On January 2, 2024, defendants filed a reply and an opposition brief, arguing they had a meritorious defense because the complaint targeted their protected First Amendment activity and was subject to dismissal under the UPEPA, which was enacted the same day. Defendants included an order to show cause with their reply, seeking relief under the UPEPA, including counsel fees and costs.

The trial judge granted defendants' motion and denied plaintiff's cross-motion on January 24, 2024. The judge also entered an order admitting defense counsel pro hac vice. The same day, plaintiff voluntarily dismissed the complaint because "[i]t [was] clear once the judge grants orders that have no basis that this will be going nowhere."

On March 12, 2024, defendants moved for relief from the judgment of dismissal pursuant to Rule 4:50-1(f). They asked the court to reopen the case for the limited purpose of considering their motion for counsel fees, costs, and expenses under the UPEPA.

The trial judge denied defendants' motion because they had not answered the complaint, even though "[t]hey were afforded the time to do so." He

interpreted defendants' intended motion for fees as a request for sanctions based on frivolous litigation. However, he found there was nothing in the record to demonstrate plaintiff's complaint was frivolous, or that he had filed the complaint "with the purpose to harass . . . defendant[s]." The judge noted he had not made any decisions on the merits of plaintiff's case. We subsequently granted leave to appeal.

I.

Defendants argue plaintiff's voluntary dismissal before the court could render a final judgment on the parties' claims constituted an exceptional circumstance warranting relief under Rule 4:50-1(f). They claim their motion should have been granted as there were important public policy interests at stake under the UPEPA, including ensuring that plaintiffs cannot dismiss their complaint as a strategic means of avoiding liability under the UPEPA.

Defendants assert the refusal to reopen the case frustrates the UPEPA's purpose to guard against using the legal system to silence others. They contend the trial judge deprived them of their right under the UPEPA to file an order to show cause for fees, costs, and expenses and left them open to a future lawsuit by plaintiff. Moreover, the dismissal provides a blueprint for other strategic lawsuits against public participation (SLAPP) litigants to misuse the legal

5

system in the same manner as plaintiff, thereby undermining the UPEPA. Defendants urge us to close this loophole.

Defendants argue the trial judge abused his discretion. They also claim he made a mistake of law when he confused the standard for obtaining fees under the UPEPA with the frivolous litigation standard.

II.

Rule 4:37-1(a) states "an action may be dismissed by the plaintiff without court order by filing a notice of dismissal at any time before service by the adverse party of an answer." Rule 4:50-1 is applicable to voluntary dismissals under Rule 4:37-1(a), even though the determination was not the result of an order or a final judgment. ASHI-GTO Assocs. v. Irvington Pediatrics, P.A., 414 N.J. Super. 351, 361 (App. Div. 2010).

We review a court's determination under Rule 4:50-1 for abuse of discretion. Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994). Rule 4:50-1(f) permits courts to vacate judgments for "any other reason justifying relief from the operation of the judgment or order."

"The [Rule] is 'designed to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have authority to avoid an unjust result in any given case.'" U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012) (citation omitted). "No

6

categorization can be made of the situations which would warrant redress under [Rule 4:50-1](f).  . . . [T]he very essence of (f) is its capacity for relief in exceptional situations.  And in such exceptional cases[,] its boundaries are as expansive as the need to achieve equity and justice."  DEG, LLC v. Twp. of Fairfield, 198 N.J. 242, 269-70 (2009) (omission and second alteration in original) (quoting Ct. Inv. Co. v. Perillo, 48 N.J. 334, 341 (1966)).

Issues of statutory interpretation are questions of law, which we review de novo.  Kocanowski v. Twp. of Bridgewater, 237 N.J. 3, 9 (2019) (citing State v. Fuqua, 234 N.J. 583, 591 (2018)).  A trial court's "interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference."  Manalapan Realty, L.P. v. Twp. Comm. of Twp. of Manalapan, 140 N.J. 366, 378 (1995) (citations omitted).

III.

"The overriding goal [of statutory interpretation] is to determine . . . the intent of the Legislature, and to give effect to that intent."  State v. Hudson, 209 N.J. 513, 529 (2012) (citing State v. Shelley, 205 N.J. 320, 323 (2011)).  "The inquiry thus begins with the language of the statute, and the words chosen by the Legislature should be accorded their ordinary and accustomed meaning."  Ibid. (citing Shelley, 205 N.J. at 353).  Courts should "apply to the statutory terms the generally accepted meaning of the words used by the Legislature,"

7

Patel v. N.J. Motor Vehicle Comm'n, 200 N.J. 413, 418 (2009), "read . . . in context with related provisions so as to give sense to the legislation as a whole." DiProspero v. Penn, 183 N.J. 477, 492 (2005) (citing Chasin v. Montclair State Univ., 159 N.J. 418, 426-27 (1999)).

In enacting the UPEPA, the Legislature instructed: "In applying and construing this uniform act, consideration must be given to the need to promote uniformity of the law with respect to its subject matter among [S]tates that enact it." N.J.S.A. 2A:53A-60. To this end, defendants point us to Jacobson v. Clack, 309 A.3d 571 (D.C. 2024), in which the District of Columbia Court of Appeals confronted a similar fact pattern to ours. There, the plaintiff sued the defendants for defamation and sought $10 million in damages after they published an article criticizing his research paper. Id. at 574. The defendants moved to dismiss under a provision of the District of Columbia Anti-SLAPP Act, D.C. Code §§ 16-5501-5505, which is like our N.J.S.A. 2A:53A-51. Ibid. However, before the trial court ruled on the motions, the plaintiff dismissed his suit. Ibid.

The Jacobson defendants moved for attorneys' fees under the D.C. anti-SLAPP law, which permits a court to award "fees to a defendant who 'prevails in whole or in part' in their special motions to dismiss." Ibid. (quoting D.C. Code § 16-5504(a)). The trial court granted the motion, and on appeal, the plaintiff argued fees were not compensable because the voluntary dismissal of

8 <span>A-2785-23</span>

his lawsuit meant the defendants did not prevail as required by the D.C. statute. Ibid.

The Jacobson appeals court noted, "[o]ne way the [D.C. Anti-SLAPP] Act dissuades SLAPPs, and makes their targets whole, is by permitting awards of attorneys' fees to defendants who prevail on their motions to dismiss." Id. at 577. The court rejected the defendant's argument because the text of the D.C. statute "simply does not say that a defendant prevails only when the court has ordered relief in their favor." Id. at 579.

The court concluded reading the D.C. statute in the manner urged by the plaintiff would enable plaintiffs to "inflict the harm the Anti-SLAPP Act was meant to combat—siphoning defendants' money, time, and resources—without recompense." Id. at 581. Instead, the better and more consonant reading of the statute is that "[a] defendant on course to prevail on their special motion to dismiss should not be at the mercy of a plaintiff[,] who might strategically voluntarily dismiss their suit to avoid paying an imminent fee award." Ibid.

We find Jacobson persuasive and reach a similar conclusion. The UPEPA "applies to a cause of action asserted in a civil action against a person based on the person's: . . . exercise of the right of freedom of speech . . . guaranteed by the United States Constitution or the New Jersey Constitution, on a matter of public concern." N.J.S.A. 2A:53A-50(b)(3). The statute states:

Not later than [sixty] days after a party is served with a . . . complaint . . . that asserts a cause of action to which this act applies or at a later time on a showing of good cause, the party may file an application for an order to show cause with the court to dismiss the cause of action or part of the cause of action.

[N.J.S.A. 2A:53A-51.]

The court is empowered to stay the underlying action while it is considering the order to show cause. N.J.S.A. 2A:53A-52. Notably, a motion for counsel fees, costs, and expenses is not subject to a stay. N.J.S.A. 2A:53A-52(c). The UPEPA mandates the court hear the order to show cause "as expeditiously as possible[,]" N.J.S.A. 2A:53A-53, and that "[t]he court shall rule on an order to show cause . . . as soon as practicable after a hearing." N.J.S.A. 2A:53A-56.

N.J.S.A. 2A:53A-55(a) sets forth the grounds on which the party filing the order to show cause can prevail and mandates the court dismiss the responding party's cause of action with prejudice in whole or in part if the movant prevails. The statute further provides as follows:

b. A voluntary dismissal without prejudice of a responding party's cause of action . . . that is the subject of an order to show cause . . . does not affect a moving party's right to obtain a ruling on the order to show cause and seek costs, attorney's fees, and expenses under [N.J.S.A. 2A:53A-58].

> c. A voluntary dismissal with prejudice of a responding's party cause of action . . . that is the subject of an order to show cause . . . establishes for the purpose of [N.J.S.A. 2A:53A-58] that the moving party prevailed on the motion.
>
> [N.J.S.A. 2A:53A-55(b) and (c).]

The UPEPA states the court "shall award" costs, attorney's fees, and reasonable litigation expenses "if the moving party prevails on the order to show cause." N.J.S.A. 2A:53A-58(1).

Pursuant to these principles, we conclude the trial judge misapplied his discretion and the law when he concluded plaintiff's dismissal of the complaint extinguished defendants' order to show cause for fees, costs, and expenses. The plain language of N.J.S.A. 2A:53A-51 does not require defendants to have filed an answer before moving to dismiss the complaint. We part ways with the trial judge's conclusion that defendants could institute a separate suit for fees. The intent of the UPEPA, specifically, N.J.S.A. 2A:53A-55(a) and (b), and N.J.S.A. 2A:53A-56, is to have the application for fees and costs heard on an order to show cause by the responding party without having to institute a separate lawsuit.

Like Jacobson, N.J.S.A. 2A:53A-58 does not confine the definition of whether a defendant has prevailed to those instances where there is court-ordered relief in their favor. If, as plaintiff argues, N.J.S.A. 2A:53A-55 limited

11

the ability to seek fees to those instances where the court had granted an involuntary dismissal of an action, it would render the language in this section of the UPEPA pertaining to voluntary dismissals a surplusage. We must avoid such a result because "an inference of surplusage in a legislative enactment should not be readily entertained." Foy v. Dayko, 82 N.J. Super. 8, 13 (App. Div. 1964). "The Legislature knows how to draft a statute to achieve that result when it wishes to do so." Zabilowicz v. Kelsey, 200 N.J. 507, 517 (2009). The plain language of the UPEPA convinces us the Legislature did not condition the ability to seek fees, costs, and expenses on a court-initiated dismissal of a SLAPP suit.

As Governor Phil Murphy noted when he signed the UPEPA into law: "This legislation will protect residents against frivolous, ill-intentioned lawsuits and insulate them from the financial hardships these cases can produce." Press Release, Off. of the Governor, Governor Murphy Signs Bipartisan Bill Protecting Against Lawsuits Designed to Suppress Free Speech, at 1 (Sept. 7, 2023).[1] Permitting the dismissal of defendants' order to show cause to stand would contravene legislative intent and create a loophole in the UPEPA allowing SLAPP plaintiffs to financially harm New Jersey residents who are the subject of their lawsuits and then strategically dismiss their suits, depriving our

---

[1] https://www.nj.gov/governor/news/news/562023/20230907d.shtml.

residents of the statutory right to seek recompense. Moreover, because the court would not be able to exercise its authority to dismiss a SLAPP suit with prejudice pursuant to the powers granted in N.J.S.A. 2A:53A-55, further harm would be visited on SLAPP suit defendants when a plaintiff dismisses their complaint without prejudice, as occurred here, only then to re-start the litigation at some future point.

For these reasons, we are satisfied there was ample exceptional circumstances presented as a matter of fact and law to warrant granting defendants' Rule 4:50-1(f) motion. Accordingly, we reverse and remand, and direct the trial judge to hear defendants' order to show cause in accordance with the procedures outlined in the UPEPA.

Lastly, the record is unclear whether the judge conflated the legal standard under the UPEPA with the frivolous litigation standard, pursuant to Rule 1:4-8 and N.J.S.A. 2A:15-59.1. Because the judge declined to hear defendants' order to show cause for procedural reasons, he did not make findings either under the Rule or the statute governing frivolous litigation, and instead, remarked there was nothing before him that would show plaintiff's filings were frivolous.

We nonetheless address this issue to provide guidance in this and other cases. The UPEPA requires a judge first decide whether plaintiff's lawsuit against defendants was based on their "exercise of the right of freedom of speech

13

. . . guaranteed by the United States Constitution or the New Jersey Constitution, on a matter of public concern," N.J.S.A. 2A:53A-50(b)(3), and that there are grounds to grant their order to show cause under N.J.S.A. 2A:53A-55(a). Thereafter, the judge shall award the prevailing party attorney's fees, costs, and reasonable litigation expenses related to the order to show cause. N.J.S.A. 2A:53A-58. Frivolity is only a consideration where the judge concludes the responding party has prevailed on the order to show cause and "finds that the order to show cause was frivolous or filed solely with intent to delay the proceeding." N.J.S.A. 2A:53A-58(2).

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division